UNITED STATES of America

v.

Gray WILLIAMS.

Crim. No. 16497.

United States District Court
E. D. Tennessee, N. D.

Dec. 18, 1961.

48

John C. Crawford, U. S. Atty., Knoxville, Tenn., for plaintiff.

Dale M. Quillen, Nashville, Tenn., for defendant.

ROBERT L. TAYLOR, Chief Judge.

This case is again before the Court on defendant's motion to suppress evidence obtained by certain officers of the City of Knoxville and County of Knox, Tennessee, on June 30, 1959 when he was arrested by these officers in Knox County, Tennessee.

The motion is based upon the proposition that the officers violated defendant's constitutional rights, as established both in the Constitution of the State of Tennessee and in the Fourth and Fifth Amendments of the Constitution of the United States, by arresting defendant and taking from his automobile several gallons of moonshine whiskey.

At the time the first motion was heard, the use of evidence in the Federal Court obtained by state officers was not barred even though such evidence was obtained in violation of the accused's constitutional rights. This principle was announced in the case of Weeks v. United States, 232 U.S. 383, 398, 34 S.Ct. 341, 58 L.Ed. 652, and Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048, and followed by our Sixth Circuit in the cases of Collins v. United States, 230 F.2d 424, (C.A. 6), Ford v. United States, 234 F.2d 835, 837, and Graham v. United States, 257 F.2d 724, 725.

This Court overruled the defendant's motion at a former term of the court and thereafter a trial followed when he was found guilty by a jury. Defendant appealed from the verdict of the jury, and pending the appeal the Supreme Court of the United States, in the case of Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669, modified its ruling in the Weeks v. United States and Burdeau v. McDowell, supra, cases by holding that [e]vidence obtained by state officers during a search which, if conducted by federal officers, would have violated the defendant's immunity from unreasonable searches and seizures under the Fourth Amendment [was] inadmissible in a federal trial, even when there was no participation by federal officers in the search and seizure.

The Government relied upon the rulings in the Weeks and Burdeau cases in the trial on the first motion. Defendant proceeded on the theory that because of a Knoxville ordinance requiring the city policemen to turn over all moonshine whiskey cases to federal officers, the ordinance made federal officers participants in all arrests and searches and seizures involving moonshine whiskey, and that what was done in this case by the city officers was chargeable to the federal officers.

This Court took a contrary view. The Court relied upon the Weeks and Burdeau cases, supra, to support its view in overruling the motion to suppress.

Because of the change in the law with respect to search and seizure, our Sixth Circuit, pursuant to a written opinion filed on December 20, 1960, 282 F.2d 940, remanded the case to this Court with directions to make findings of fact and conclusions of law on "the factual circumstances leading up to the arrest of appellant, about which the parties are apparently not in accord, [and which] were not developed in detail [in the first trial]." The Court of Appeals stated that the record "does not contain findings which are necessary in order for this Court to pass on the legality of the arrest and the search." The Court also stated that "[u]nder the circumstances, appellant's motion to suppress should be reconsidered by the District Judge, with permission to both parties to introduce additional evidence pertaining to the arrest and search, followed by findings of fact and conclusions of law by the District Judge with respect thereto."

This Court has now heard additional evidence from the officers who made the arrest of defendant and now makes the following findings of fact and conclusions of law:

Robert F. Poynter, a Knoxville policeman, was assigned to the Vine Street, Willow Street, Magnolia Avenue and Jackson Street area on a patrol beat to check business houses at the time of the occurrences referred to herein. His duties required patrolling of the area in the vicinity of Willow and Patton Streets, along with Policeman Brooks, in which area many break-ins had occurred and at that time the policemen were investigating all strange cars in the area.

In the early morning of June 30, 1959, between 4:30 and 5:00 a. m., a strange car which, as later developed, was driven by the defendant and occupied by a boy by the name of Evans, was moving west on Willow Street. This car turned south on Patton Street; Officer Brooks pulled up behind him and turned the spotlight on his car, but the car began to move; thereafter the officer turned the siren on but the car continued to travel at a fast rate south on Patton, east on Nelson, back south on Rocky Alley, and then went west on Vine Street and back to Patton and north on Patton and down to Jackson, east on Jackson and on through the Burlington section onto the Asheville Highway in an easterly direction and turned off of the Asheville Highway after it had gone some distance, and after turning off of the highway it later turned right at the Carter School Road and as it undertook to make a sharp turn at a bridge over a small stream on this road it overturned while running at a very rapid rate of speed and while being pursued by the officers. After the car turned over, defendant and Evans came out of it and they were placed under arrest by the officers.

About this time Officer Poynter left the place of the wreck and radioed for a wrecker, and upon his return to the defendant's car the officers were unloading the whiskey that was in the trunk of this car. The wreck had caused the trunk of the car to come open and the officers observed the cartons of whiskey in the trunk.

As previously indicated, when the spotlight was first turned onto defendant's car he began to drive very rapidly and reached speeds as high as 90 miles or more per hour. He ran as high as 60 to 65 miles an hour around sharp curves in the City of Knoxville at places where the

speed limit was 30 miles an hour. He ran the stop sign at Patton and Jackson Streets, at Bell Avenue and McCalla Avenue, and possibly Bertrand and McCalla. He drove some 10 to 12 miles from the place where he was first observed by the officers to the place of the accident. He drove about one-half mile off of the Asheville Highway before his car turned over. He was charged by the city officers with speeding and failing to stop at stop signs and reckless driving and fined $150.00 by the City Court.

The proof indicates, and the Court finds, that Officer Poynter, at the time of defendant's arrest, was not only a policeman for the City of Knoxville but also a deputy sheriff of Knox County. The proof is silent as to whether the other policemen who participated in the arrest were also deputy sheriffs of Knox County.

The officers had no information about defendant's car before they flashed their spotlight on it. The defendant was not violating the law at the time the spotlight was turned on his car by Officer Poynter, but when this light was turned onto his car, he began to move fast and reached a speed that was greatly in excess of the speed limit of the City of Knoxville and greatly in excess of the State speed limit of 55 miles an hour in the nighttime.

Officer James E. Hutchison was another officer involved in the chase and arrest of the defendant. His testimony is corroborative of the testimony of Officer Poynter. The effect of his testimony is that the trunk of the car was knocked open in the wreck and that this enabled him and the other officers to see the cartons in which were half-gallon jars containing the moonshine whiskey.

Officer James W. Cloonan, who drove a separate patrol car, tried to pass the defendant on the Asheville Highway while he, the officer, was traveling around 100 miles an hour. The defendant was running between 90 and 100 miles an hour at the time the officer tried to pass him. Officer Cloonan corroborates the testimony of the other officers that the

trunk of the car was knocked open during the wreck.

One of the officers stated that the trunk was all the way open while Officer Cloonan stated that it was about halfway open. Each officer who testified states that he did not open the trunk of the car.

Officer Jack T. Brooks corroborates the testimony of the other officers on the main points in the case.

Richard Evans was the young man in the car with the defendant at the time of the chase and the arrest. Young Evans corroborates the testimony of the officers about the defendant's car stopping at the intersection of Patton and Willow and about the officers turning the spotlight on defendant's car at that point and later turning on the siren. He stated that during the chase he heard pistol shots fired. The officers deny that they fired any pistol shots. Evans also stated that Officer Cloonan hit him in the face after his arrest. This is denied by Officer Cloonan. Evans also stated that one of the officers, whom he could not identify, took the key out of the ignition switch of the car and opened the trunk of the car. This was denied by the officers.

■ The Court finds as a fact that the trunk of the car was knocked open as a result of the car overturning; that it overturned while making a sharp turn on a curve at or near the place of the accident.

The Court further finds that the arrest of the defendant was made shortly after his car overturned. Defendant's counsel insisted during the argument that the arrest was made at the intersection of Willow and Patton Streets in Knoxville at the time Officer Poynter, or the officer who was with Poynter, turned the spotlight onto the defendant's car. If not made at that time, it was made at the time the officers turned on the siren and continued in pursuit of the car.

The officers did not intend to arrest defendant when the spotlight was turned on his car, but intended to investigate, just as they were investigating all other strange cars in the vicinity during that

period because of the burglaries that had been committed in that area.

The question arises, whether the officers had a legal right to turn the spotlight on defendant's car or to try to stop him for investigation.

The District Attorney argued that the officers had that right while the attorney for the defendant argued that the officers did not have such right. Since the defendant was not arrested at that time and his car was not searched, an answer to this is not necessary for a determination of the controlling issues in the case.

■ Another question to be considered in the case is whether the officers had a right to arrest defendant immediately following the wreck. If the arrest was not made under federal law, then it is governed by state law, which in this case is the law of Tennessee. Brubaker v. United States, 6 Cir., 183 F.2d 894, 897. Section 40–802, T.C.A. sets forth the grounds for arrest by an officer without a warrant. The officers in the present case did not have a warrant.

The statute provides that an officer may without a warrant arrest a person for a public offense committed or a breach of peace threatened in his presence. This is the only part of the statute that is pertinent to this case.

In the case of Robertson v. State, 184 Tenn. 277, 282, 283, 198 S.W.2d 633, the Court stated:

"In the case of misdemeanors, of which the offense charged in this case is an instance, an officer may, without a warrant, arrest a person for a public offense committed or a breach of the peace threatened in his presence. With this exception, an officer has no right to arrest for a misdemeanor without a warrant. He has no right to make a search without a warrant except where he had made a lawful arrest; then the search of the person of the offender may follow. There was no search warrant in this case, and the matter turns upon the evidence procured by the officers as a result of their stop-

ping the car of the defendants." 184 Tenn. pp. 282, 283, 198 S.W.2d p. 635.

The officers in the present case had a right to pursue the defendant and arrest him upon either of three grounds: (a) For driving in a reckless, dangerous manner in their presence. (b) For driving in excess of 30 miles an hour which was the speed limit in Knoxville in the presence of the officers. (c) For driving through at least two stop signs and possibly three in violation of the applicable city ordinances.

■ All of the offenses for which the officers chased him were misdemeanors under the Tennessee law and the arrest for a misdemeanor does not, under Tennessee law, give the officer the right to search the defendant's car. Elliott v. State, 173 Tenn. 203, 116 S.W.2d 1009. But the pursuit by the officers because of the misdemeanors committed in their presence accounted for their presence at the time the car overturned and its trunk door was thrown open exposing the cartons containing liquor. The number of cartons seen would, under all of the circumstances, constitute sufficient probable cause that liquor was being transported in an amount that would violate a statute of the state.

The Court has found that at least one of the officers was a deputy sheriff of Knox County which authorized him to arrest defendant within the confines of Knox County. Had the defendant committed a felony in the presence of the officers, or if there was probable cause for them to believe that he had committed a felony, they could have pursued him and arrested him beyond the city limits of Knoxville, even though not deputized, under what is sometimes referred to as the "fresh pursuit" doctrine. See 4 Am. Jur., Arrests, Section 18; also see T.C.A. §§ 40–811, 40–812 (Tennessee statute only applies to felonies).

The Court finds and concludes that the arrest was legal.

■ This brings us to the final question in the case; namely, whether a

**52**

search of defendant's car was made as incident to his arrest. As the Court has previously indicated, a search cannot be made as an incident to the arrest for a misdemeanor. If the officers observed moonshine whiskey in the car before the arrest was made or simultaneously with the arrest, or incident to the arrest, it was not necessary for them to have made a search of the car. As was stated in the case of Trujillo v. United States, (C.A. 10), 294 F.2d 583, it is not necessary for a search to be made of that which can be observed with the naked eye. See United States v. Copes, Jr., et al., D.C., 191 F. Supp. 623.

The Court finds that the officers observed the cartons in which were located the half-gallon jars that contained the whiskey that were located in the trunk of the car soon after they reached the spot where the car wrecked; that they were experienced officers and had experience in investigating and arresting people who dealt in moonshine whiskey; that they believed that the cartons contained half-gallon jars of moonshine whiskey because it is a well-established custom in this area for transporters and distributors of moonshine whiskey to use half-gallon jar containers and to place the half-gallon jar containers in cartons.

The Court finds that defendant's constitutional rights were not violated. If the Court is mistaken in its finding that the officers did not search defendant's car—apparently the Sixth Circuit proceeded upon the theory that the motion was originally tried on the theory that a search was made of the defendant's car as the Court used this language on page 797 of its opinion in 314 F.2d, "with permission to both parties to introduce additional evidence pertaining to the arrest and search * * *"— the Court finds that the officers had the right to seize the evidence when they observed the cartons of whiskey in the open trunk of the car. Brubaker v. United States, supra.

Defendant's motion to suppress is denied.