BILL LIMING, Plaintiff in Error,

*v.*

STATE OF TENNESSEE, Defendant in Error.

417 S.W.2d 769.

(*Nashville,* December Term, 1966.)

Opinion filed August 9, 1967.

372

J. H. RENEAU, III, Celina, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, and EDGAR P. CALHOUN, Assistant Attorney General, Nashville, for the State; BAXTER KEY, District Attorney General, and A. F. OFFICER, JR., Assistant Attorney General, Livingston, prosecuted the case for the State in the trial court.

MR. JUSTICE HUMPHREYS, delivered the opinion of the Court.

Liming was convicted of unlawfully carrying a pistol and sentenced to ninety days in jail and fined fifty dollars. He has appealed and assigned errors. We need notice only two: One on the charge to the jury which we think

requires a reversal for a new trial, and another which raises a search and seizure question which must be settled. These assignments are:

"The court erred in admitting into evidence, over defendant's objection, the result of a search of defendant's automobile and the testimony of state's witnesses as to the result of said search, said evidence being obtained as the result of an unlawful and unreasonable search of the defendant's automobile.

"Because the court erred in charging the jury as follows: 'The fact that he had them in his car (referring to the pistols) the presumption is that he carried them for the purpose of being armed, and the burden of proof is on him to show that he had them for some lawful and legitimate purpose.' "

The first assignment must be overruled, while the second is good and requires a reversal.

The facts are, briefly, that a police officer of the Town of Celina, Clay County, Tennessee, with the aid of the sheriff of the county, evidently after putting up some kind of roadblock, managed to arrest defendant for speeding at sixty miles per hour in a fifteen mile speed zone. After the arrest, the police officer, who testified he had been warned the defendant had two pistols with him, searched defendant's person and his small foreign automobile and found a .38 caliber pistol in the glove compartment and a German Luger in the trunk, both fully loaded.

At the trial it was conceded the arrest for speeding was lawful, but it was contended there, and here, that the arrest being for a misdemeanor there could be no in-

cidental search of the automobile in which defendant was riding.

When the evidence of the search and the finding of the pistols was offered proper objection was made and an investigation of the circumstances of the arrest and search was conducted by the trial judge in the absence of the jury, resulting in the trial judge admitting the evidence.

It was apparently the district attorney's theory the search was valid on the contention defendant had voluntarily waived his immunity from search. This contention was predicated on the testimony of the arresting officer:

"Q. Go ahead and tell what you did Mr. Smith?

A. I stopped him here on the square and arrested him for speeding and * *

THE COURT: Who stopped him?

A. I did. I catched him out there and the sheriff was sitting right here on the square and I got out and arrested him and told him I wanted to search his car and he said there it is.

THE COURT: You told him you were going to search his car?

A. Yes and he said there it is."

Against this there is the testimony of defendant, who is corroborated by disinterested witnesses, to the effect defendant rather objected to having his car searched and had to be warned back from the automobile by the arresting officer.

■ In *Simmons v. Bomar*, 6 Cir., 349 F.2d 365, it is held that consent to a search in order to be voluntary

must be unequivocal, specific and intelligently given, uncontaminated by any duress or coercion, and is not likely to be inferred.

■ Such being the law, our opinion is the search was not authorized by a voluntary waiver of immunity by the defendant simply by saying "there it is" after the arresting officer had declared his intent to search the automobile.

■ However, this is not determinative of this issue in defendant's favor. We are of opinion, as was the trial judge, that the search was valid as an incident to a lawful arrest. And the fact the arrest was for a misdemeanor or a violation of a city ordinance does not alter the case.

Our leading case on arrest is *Hughes v. State,* 145 Tenn. 544, 238 S.W. 588, 20 A.L.R. 639. There it is stated:

" 'An officer making an arrest has authority to search the person of his prisoner, even against his will; but a search is justifiable only as an incident to a lawful arrest, and if the arrest is unlawful the search is also unlawful. Thus an officer acting without a warrant for an arrest and without attempting to make an arrest is not justified in making a search of a person upon mere suspicion that he has committed a crime. The officer making an arrest and search of the person of the prisoner may take from him any dangerous weapons, or anything else that he reasonably may deem necessary to his own or the public safety, or for the safe-keeping of the prisoner, and take into his possession the instruments of the crime and such other articles as may be of use as evidence on the trial, or which might enable the prisoner to escape.' " 145 Tenn. 566-567, 238 S.W. 588, 594.

It will be noted there is nothing in this statement limiting its application alone to felony arrests. And, of course, there is no reason for any such limitation. It is as essential in a misdemeanor arrest that the officer have authority to disarm the arrestee as it is in a felony case.

The validity of a search as an incident to an arrest has not been held in any Tennessee case to depend on whether the arrest was for a misdemeanor or a felony. In *Van Pelt v. State,* 193 Tenn. 463, 246 S.W.2d 87, officers arrested defendant for a misdemeanor. She stated she wanted to change her clothes and made certain motions, crossing her hands across her chest. She then went into a back room where one of the officers saw her slip something out of her bosom and place it between the mattresses on the bed. There is no evidence the officer could tell what any of these things were, or that he saw anything of an unlawful or incriminating nature until they searched her person and her bed and found incriminating evidence. This Court sustained the search, saying:

"It is also assigned as error that one of the officers made an illegal search of the plaintiff in error after she was arrested. No question was made as to the validity of the arresting warrant and the arrest. The articles discovered were an incident to the arrest. An officer is authorized to search without a search warrant when the arrest is lawful, such has long been the law in this State. *Hughes v. State,* 145 Tenn. 544, 238 S.W. 588, 20 A.L.R. 639; *Elliott v. State,* 173 Tenn. 203, 116 S.W.2d 1009; *McCanless v. Evans,* 177 Tenn. 86, 146 S.W.2d 354." 193 Tenn. 472, 246 S.W.2d 91.

In all of our cases the question of the validity of the incidental search has turned on the common law basis of the right to search in connection with an arrest as stated

in *Hughes v. State,* as that rule has been necessarily explained in its application in particular cases. Always, the inquiry has been whether or not the search could reasonably and fairly be related to one of the common law grounds for search recognized in that case.

In 79 C.J.S. Searches and Seizures sec. 68, it is said:

"No search warrant is necessary in order to search the vehicle in which a person is riding at the time of his arrest for an offense committed in the presence of the officer, including a felony or a misdemeanor; and such a search is not unreasonable under the constitutional guaranty."

We have quoted this simply to illustrate there is no acceptable difference between a felony and a misdemeanor as regards a search connected with an arrest. By quoting it we do not mean to depart from the teachings of *Hughes v. State,* nor from *Elliott et ux v. State,* 173 Tenn. 203, 116 S.W.2d 1009, of which we shall have more to say presently.

*United States v. Williams,* 230 F.Supp. 47, and *United States v. Cole,* 243 F.Supp. 421 are cited as authority for the proposition that an officer may not search a defendant's automobile as an incident to an arrest for a misdemeanor. These two opinions are predicated on *Elliott et ux v. State,* 173 Tenn. 203, 116 S.W.2d 1009, and cases applying the rule there postulated, and in Elliott it is recognized that a search which is necessary to disarm a person arrested for a misdemeanor is not unreasonable. After citation of authorities, including *Hughes v. State,* recognizing the validity of a search for the purpose of disarming a prisoner, the Court pointed out that it was invalidating the search after the arrest in that case, which

was for a misdemeanor, because, the search, quite obviously, was not for the purpose of disarming the prisoners, or securing proof of their guilt of that offense. "The evidence thus sought and obtained was for another wholly unrelated offense * * *." This statement inferentially approved the search of an automobile where this is necessary to disarm a misdemeanant.

The federal aspect of this assignment is foreclosed against the defendant by *Preston v. United States,* 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777, where the U. S. Supreme Court in discussing this proposition said:

"Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. *Weeks v. United States,* 232 U.S. 383, 392, 34 S.Ct. 341, 344, 58 L.Ed. 652 [655] [LRA 1915B 834] (1914); *Agnello v. United States,* 269 U.S. 20, 30, 46 S.Ct. 4, 5, 70 L.Ed. 145 [148] [51 A.L.R. 409] (1925). This right to search and seize without a search warrant extends to things under the accused's immediate control, *Carroll v. United States,* supra, 267 U.S. [132,] at 158, 45 S.C. [280,] at 287, 69 L.Ed. 543, [at 553,] and, to an extent depending on the circumstances of the case, to the place where he is arrested, *Agnello v. United States,* supra, 269 U.S. at 30, 46 S.Ct. [4,] at 5, 70 L.Ed. 145 [at 148]; *Marron v. United States,* 275 U.S. 192, 199, 48 S.Ct. 74, 77, 72 L.Ed. 231 [238] (1927); *United States v. Rabinowitz,* 339 U.S. 56, 61-62, 70 S.Ct. 430, 433, 94 L.Ed. 653 [657-658] (1950). The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to as-

sault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime —things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control.'' 376 U.S. 364, 84 S.Ct. 883, 11 L.Ed.2d 780.

What we hold is that while the officer would not have been justified in arresting defendant and searching either him or his automobile on information he was armed; where circumstances compelled the officer to arrest the defendant because he was violating city safety ordinances in such a grossly wilful manner as to evince a dangerous attitude, the officer had the right and duty to search the defendant (who is described by the trial judge as an active, vigorous man) and the small automobile in which he was riding (which was in arm's length until the policeman warned him back) for the purpose of disarming him. So as to avoid a tragedy, an ever present possibility where loaded firearms are in reach of reckless persons.

As indicated, we are of opinion the assignment of error on the charge to the jury is good. The bill of exceptions shows the trial judge instructed the jury: ''The fact that he had them in the car (referring to the pistols), the presumption is that he carried them for the purpose of being armed, and the burden of proof is on him to show that he had them for some lawful or legitimate purpose.''

▇ This instruction is erroneous as it relieved the State of the obligation of proving intent to go armed, an essential ingredient of the offense as defined by T.C.A. 39-4901, and deprived defendant of the presumption of innocence.

The statute provides in relevant part, "Any person who shall carry in any manner whatever, *with intent to go armed,* any * * * pistol or revolver of any kind whatsoever * * * shall be guilty of a misdemeanor." Emphasis supplied.

In *Hill v. State,* 201 Tenn. 299, 298 S.W.2d 799, this Court held in specific terms that the carrying of a pistol "with intent to go armed" is the gravamen of the offense.

This was nothing new, as in *Page v. State,* 50 Tenn. 198, (1871), the Court had already held:

"To constitute the carrying criminal, *the intent with which it is carried must be that of going armed, or being armed, or wearing it for the purpose of being armed.* In the case before us, the intent with which Page was carrying his pistol was fully developed. He was carrying it that he might be armed, as was shown by his threatened assault upon the prosecutor. It would be difficult to enumerate all the instances in which one of these weapons could be carried innocently and without criminality. It is sufficient here to say, that, *without the intent or purpose of being or going armed, the offense described in this statute cannot be committed."* (Emphasis supplied)

Turning to more general, encyclopedic authorities, we find 22 C.J.S. Criminal Law sec. 32, declares:

"Where a specific intent is an element of a crime, the specific intent must be proved as an independent fact and cannot be presumed from the commission of the unlawful act."

The text under this headnote continues:

"A crime may consist of an act combined with a specific intent, which means more than a mere general intent

to commit the act; and, where the statute defining a crime includes a specific intent as an ingredient of its criminality, such intent is essential and must be established. For such crimes, the specific intent is just as much an element of the crime as is the act; the requirement as to intent is coextensive with the act prohibited, and existence of the specific intent at the time the crime charged was committed is required." 22 C.J.S. Criminal Law sec. 32, pp. 115, 116.

As to presumptions, it is settled law that while they may be indulged in criminal cases, this cannot be done to deprive the defendant of the presumption of innocence as was done in this case.

In *Marie v. State,* 204 Tenn. 197, 319 S.W.2d 86, presumptions are discussed, and it is said that a presumption is a substitute for evidence which, in the absence of direct evidence conflicting, requires as a matter of law that a certain fact conclusion be accepted or proved by the jury. In this case, Underhill's Criminal Evidence, 5th Ed., is quoted with approval as saying:

"So, though the decisions are not harmonious, the better and more reasonable view is that the law will not countenance any presumption, which by overcoming the presumption of innocence will cast the burden of proving his innocence upon the defendant." Section 43, p. 66.

In the case of *Persons v. State,* 90 Tenn. 291. 16 S.W. 726, this Court said:

"It is contended the rules of evidence are the same in civil and criminal cases. Such is the general rule, but it does not follow, that because the rule is the same, that presumptions applicable in one are always appli-

cable in the other, for an antagonistic presumption may exist, and does, in criminal cases; that is, the innocence of the defendant. That presumption of innocence does not allow the presumption of any fact against it." 90 Tenn. 295, 16 S.W. 727.

This case was decided in 1891, but it is still the law in Tennessee today.

Since the statute as construed by our cases makes "intent to go armed" an essential, specific ingredient of the offense, and this specific ingredient of intent cannot be proved alone by the proof of commission of the act to which it relates, and so certainly cannot be established by presumption so as to deprive a defendant of his presumption of innocence, the assignment of error under discussion is sustained, the judgment set aside, and the case remanded for a new trial.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.