Aaron ARMES, Plaintiff-in-Error,

v.

STATE of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

May 26, 1976.

Certiorari Denied by Supreme Court July 26, 1976.

George H. Buxton, III, Oak Ridge, for plaintiff-in-error.

R. A. Ashley, Jr., Atty. Gen., Jack E. Seaman, Asst. Atty. Gen., Nashville, Arzo Carson, Dist. Atty. Gen., Huntsville, Robert T. Beaty, Asst. Dist. Atty. Gen., Oneida, for defendant-in-error.

DUNCAN, Judge.

## OPINION

The defendant, Aaron Armes, brings this appeal contesting his conviction for murder

in the second degree, for which offense he received a penitentiary sentence of 30 years.

In his first complaint, the defendant argues that the court erred in allowing certain statements made by him to a deputy sheriff to be admitted into evidence.

Officer John Seiber testified that while he was transporting the defendant from the scene of the shooting to the jail, the defendant volunteered a statement to him, the officer's testimony in this regard being as follows:

> "Yes, sir, he made the statement that he killed her over something that he had nothing to do with, and then in a moment or two, he made another, or asked the question, rather, asked if, in my opinion, that he could get off on the grounds of temporary insanity."

The defendant objected to the introduction of this testimony on the grounds that the statement constituted a form of "plea bargaining." The trial court denied his motion to suppress this testimony and held it to be admissible. We are of the opinion that the trial court was correct in its ruling.

■ Without discussing the technical aspects of "plea bargaining" and the proper persons who can engage in such activity, we categorically state that a mere inquiry from a defendant to a deputy sheriff about the feasibility of a possible defense to a homicide does not rise to the level of "plea bargaining."

In his brief, the defendant cites *Moulder v. State*, 289 N.E.2d 522, 525–27 (Ind.App. 1972), where the Court said:

> "The majority of our courts now follow the rule that communications relating to plea bargaining in criminal prosecutions are privileged and are not admissible in evidence."

However, the *Moulder* opinion further states:

> "The character of the communication is the test to be applied. The communication must have as its ultimate purpose the reduction of punishment or other fa-

vorable treatment from the State to the defendant."

In the present case, the defendant's statement to the deputy sheriff contained no offer to plead guilty, nor did he seek any favorable consideration from the deputy sheriff. Clearly, the defendant's statements did not have as their ultimate purpose the reduction of punishment or other favorable treatment from the State. We find no merit to the complaint made and overrule the assignment.

■ Next, the defendant complains of the following portion of the trial judge's charge to the jury:

> "The use of a deadly weapon by the party killing, when shown, raises a presumption of malice sufficient to sustain a charge of second degree murder unless it is rebutted by other facts and circumstances."

The defendant insists that this language in the jury charge denied him constitutional due process, and he relies upon the authority of *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). In our opinion, the quoted instruction, when considered in the context of other pertinent instructions given by the court, or even considered by itself, does not run afoul of the United States Supreme Court's holdings in these cases.

After charging the jury on the offense of murder in the first degree, the trial judge then instructed the jury regarding the offenses of murder in the second degree, voluntary manslaughter, and involuntary manslaughter, meticulously setting forth the elements of each of these offenses. The charge clearly instructed the jury that before they could convict the defendant of any one of these offenses, the State had the burden of proving beyond a reasonable doubt all of the elements of such offense.

*In re Winship,* supra, held that the "Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Criminal prosecutions in Tennes-

see have always been conducted in accordance with this rule. We find nothing in the court's charge in the present case that is contrary to this basic proposition.

In *Mullaney v. Wilbur,* supra, the United States Supreme Court considered the effect of presumptions in murder cases as they related to the ultimate burden of proof. *Mullaney* involved a state of Maine rule that required a defendant charged with murder to prove that he acted in the heat of passion on sudden provocation in order to reduce the homicide to manslaughter.

In *Mullaney,* the trial court instructed the jury that Maine law recognized only two kinds of homicide, murder and manslaughter; that malice aforethought was an essential element of the crime of murder, without which the homicide would be manslaughter; that if the prosecution established that the homicide was intentional and unlawful, malice aforethought would be conclusively implied unless the defendant proved by a fair preponderance of the evidence that he acted in the heat of passion on sudden provocation; and that malice aforethought and heat of passion on sudden provocation were inconsistent things and that by proving the latter the defendant would negate the former and reduce the homicide from murder to manslaughter.

The United States Supreme Court held that this Maine rule did not comport with the requirement of the due process clause of the fourteenth amendment that the prosecution must prove beyond a reasonable doubt every fact necessary to constitute the crime charged, citing *In re Winship,* supra. The Court concluded by specifically saying:

> "We therefore hold that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case."

A close reading of *Mullaney* and the footnotes to it indicate that legal presumptions in favor of the State are forbidden only in very limited situations. As we interpret *Mullaney,* it only addresses the issue of the erroneous use of presumptions where the

effect is to shift the burden of proof from the State to the defendant. *Mullaney* sanctions the use of presumptions so long as they satisfy certain due process requirements and do not remove the State's burden to prove each element of the offense beyond a reasonable doubt. *Mullaney* further approves the legal principle that a defendant may be required to produce "some evidence" contesting the otherwise presumed or inferred fact; that is, that he satisfy the production burden but not the ultimate burden of persuasion. *Mullaney v. Wilbur,* supra, 95 S.Ct. nn. 20, 28, 31, at 1888, 1891–92.

In *Mullaney,* the Court recognized that many states require a defendant to show some evidence indicating that he acted in the heat of passion before requiring the prosecution to negate this element by proving beyond a reasonable doubt the absence of any passion. The Court found no fault with this proposition, stating, "Nothing in this opinion is intended to affect that requirement." *Mullaney,* supra, 95 S.Ct. n. 28, at 1891.

Even though *Mullaney* would sanction it, the instructions in the present case did not require the defendant to negate malice, nor did they place on him the burden of going forward with "some evidence."

The "presumption" used in the present case is similar to the constitutionally permissible "presumptions" which have been approved by the United States Supreme Court. *United States v. Gainey,* 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965); *Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973).

In *United States v. Gainey,* supra, the Court held constitutionally permissible an inference of guilty knowledge from the defendant's presence at an illegal still, stating that there was a rational connection between the facts proved and the ultimate fact presumed. In *Barnes v. United States,* supra, the trial judge instructed the jury that the unexplained possession of recently stolen property would justify an inference that the defendant possessed it with the

knowledge that it was stolen. In holding this inference was constitutionally permissible, the Court said, 93 S.Ct. at 2362–63:

"The evidence established that petitioner possessed recently stolen Treasury checks payable to persons he did not know, and it provided no plausible explanation for such possession consistent with innocence. On the basis of this evidence alone common sense and experience tell us that petitioner must have known or been aware of the high probability that the checks were stolen. Cf. *Turner v. United States,* 396 U.S. [398], at 417, 90 S.Ct. [642], at 652 [24 L.Ed.2d 610]; *Leary v. United States,* 395 U.S. [6], at 46, 89 S.Ct. [1532], at 1553 [23 L.Ed.2d 57]. Such evidence was clearly sufficient to enable the jury to find beyond a reasonable doubt that petitioner knew the checks were stolen. Since the inference thus satisfies the reasonable doubt standard, the most stringent standard the Court has applied in judging permissive criminal law inferences, we conclude that it satisfies the requirements of due process."

As explained by the United States Supreme Court in *Mullaney,* such inferences or presumptions, as were involved in *Gainey* and *Barnes,* do nothing more than shift the production of proof burden to the defendant. This is constitutionally permissible where the presumed or inferred fact satisfies due process requirements. *Mullaney,* supra, 95 S.Ct. n. 31, at 1891–92. Also, see generally, *McCormick,* on Evidence, § 346 (2d ed., 1972).

In the *Barnes* case, 93 S.Ct. n. 11, at 2363, our attention is called to the proposition that the burden of going forward may not be freely shifted to the defendant, citing *Tot v. United States,* 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed.2d 1519 (1943) and *Leary v. United States,* 395 U.S. 6, 44–45, 89 S.Ct. 1532, 1552, 23 L.Ed.2d 57 (1969), but then the *Barnes* Court went on to state:

"*Tot* held, however, that where there is a 'rational connection' between the facts proved and the fact presumed or inferred, it is permissible to shift the burden of going forward to the defendant. Where an inference satisfies the reasonable-doubt standard, as in the present case, there will certainly be a rational connection between the fact presumed or inferred (in this case, knowledge) and the facts the Government must prove in order to shift the burden of going forward (possession of recently stolen property)."

Certainly, in the present case, there is a rational and logical connection between the facts proved, i. e., an intentional killing by the use of a deadly weapon without any justification, and the fact presumed or inferred, i. e., malice.

In Tennessee, the rule has long been followed that, "All homicides are presumed to be malicious in the absence of evidence which would rebut the implied presumption. And, if a weapon is handled in a manner so as to make the killing a natural and probable result of such conduct, malice will be presumed from the use of the weapon." *Everett v. State,* 528 S.W.2d 25 (Tenn.1975); *Sikes v. State,* 524 S.W.2d 483 (Tenn.1975); *Gann v. State,* 214 Tenn. 711, 383 S.W.2d 32 (1964); *Morelock v. State,* 3 Tenn.Cr.App. 292, 460 S.W.2d 861 (1970).

In examining the trial judge's instructions in the present case in the light of these Tennessee and United States Supreme Court cases to which reference has been made, we do not see any problem with respect to the specific complaint before us. In the present case, the jury was advised that the State had the burden of proving beyond a reasonable doubt all of the elements of second degree murder. Once the State carried this burden, the proof *ipso facto,* negated beyond a reasonable doubt all of the elements of voluntary and involuntary manslaughter. Insofar as the jury charge in question is concerned, *Mullaney* requires nothing more.

The instruction complained of merely told the jury that the use of a deadly weapon in a homicide raised a presumption of malice which would support a verdict of second degree murder unless other facts and circumstances rebutted this presumption. This instruction did not place

upon the defendant the burden of proving the absence of malice. Unlike *Mullaney,* the charge placed no burden upon the defendant to prove any element of the offense. It did not require the defendant to present other facts and circumstances, or any evidence to rebut the presumption. Certainly, the jury could consider any proof offered by the defendant and/or his witnesses in deciding if the presumption had been rebutted, but it also could look to all of the State's direct proof, the proof elicited upon cross-examination of the State's witnesses, and every other fact and circumstance in the case in deciding the issue.

As stated in *Ingram v. State,* 1 Tenn.Cr. App. 383, 387, 443 S.W.2d 528, 530 (1969): " 'The law presumes malice from the killing with a deadly weapon, *but the jury may look to all the facts and circumstances developed by the evidence, either of State or the defendant,* to ascertain whether the malice is rebutted, a reasonable doubt enuring to the benefit of the defendant: *Bryant v. State,* 7 Baxt. 67' [66 Tenn. 67 (1872)]; *Foster v. State,* 74 Tenn. 213 (1880)." (emphasis added).

The instruction in the present case is unlike the instruction denounced by our Supreme Court in *Liming v. State,* 220 Tenn. 371, 373, 379, 417 S.W.2d 769, 770, 772 (1967). In the *Liming* case, the Court discussed a presumption in the context of a specific intent crime. There the trial judge instructed the jury that "The fact that he had them in his car (referring to the pistols) the presumption is that he carried them for the purpose of being armed, *and the burden of proof is on him to show that he had them for some lawful or legitimate purpose.*" (emphasis added). Our Supreme Court found that this instruction was erroneous since it "relieved the State of the obligation of proving intent to go armed, an essential ingredient of the offense . . . and deprived defendant of the presumption of innocence." '

■ Another basis for the result reached in the *Liming* case is simply that the fact that an individual carries pistols in a car is not a sufficient reason for presuming an intent to go armed. There is no rational connection between the facts proved, i. e., having the pistols in the car, and the fact presumed or inferred, i. e., the intent to go armed. *Barnes v. United States,* supra, 93 S.Ct. n. 11, at 2363. Another obvious reason for the *Liming* result is that the court's instructions, as emphasized above, shifted the burden of persuasion to the defendant. This is not permissible. *Mullaney v. Wilbur,* supra; *In re Winship, supra.*

We do not have a *Liming* type instruction involved in the present case. Here, the instruction did not shift to the defendant the burden of proof in the sense of the burden of persuasion. Actually, the instruction did not even shift the production burden to the defendant, as would have been permissible. *Mullaney,* supra, 95 S.Ct. nn. 20, 28, 31, at 1888, 1891–92. In our view, the court's charge in the present case is compatible with *Mullaney.*

Our interpretation of *Mullaney* is consistent with the recent holding in *State v. Travis,* 26 Ariz.App. 24, 545 P.2d 986 (1976) where that Court held that the inference of malice to be drawn from the use of a deadly weapon does not violate the standards of *Mullaney.*

In his brief, the defendant also takes issue with the Tennessee rule that when a deliberate killing is shown, the law presumes the existence of malice sufficient to support a conviction of second degree murder, and when such is shown the burden is on the State to establish that the killing constituted murder in the first degree, if such is charged, and a corresponding burden is on the defendant to show mitigating facts and circumstances sufficient to reduce the degree of the homicide below second degree murder. *Thomas v. State,* 210 Tenn. 297, 358 S.W.2d 315 (1962); *Braziel v. State,* 529 S.W.2d 501 (Tenn.Cr.App.1975); *Shanklin v. State,* 491 S.W.2d 97 (Tenn.Cr.App. 1972); *Gordon v. State,* 478 S.W.2d 911 (Tenn.Cr.App.1971).

The defendant argues that the portion of this rule placing the onus on a defendant to reduce a crime of second degree murder to

manslaughter, is contrary to the holdings of the *Mullaney* case. Certainly, the burden of persuasion in a criminal case cannot be shifted to the defendant, and in light of *Mullaney*, this issue will merit the court's critical analysis, if and when it is properly before the court; however, we are not involved with this question in the present case. Here, the trial court's instructions did not contain any of this suspect language, nor did they place any burden of proof on the defendant to reduce the offense from second degree murder to a lesser degree.

▋ In this case, apart from the presumption of malice arising from the use of the deadly weapon, the jury had before it many other facts and circumstances to show malice on the part of the defendant.

The evidence in this case showed that the deceased was killed with a shotgun on March 9, 1975, at about 2:00 a. m. Shortly after the killing, the defendant told an ambulance driver that he had shot the deceased and that she was out in the trailer "floating in her own blood." The defendant volunteered a statement to a deputy sheriff that he "killed her over something that he had nothing to do with," and solicited the deputy sheriff's opinion as to whether he "could get off on the grounds of temporary insanity."

The defendant admitted to the sheriff that he and his wife had argued over a suspected relationship between her and his brother; that he was cleaning his shotgun at about 2:00 a. m., and fired the gun into the yard; that he didn't remember reloading the gun, and did not hear it go off again, but that as he was leaning over to turn on a heater, he saw his wife fall.

The sheriff found one spent shotgun shell on the kitchen table and another spent shell in the gun. It was shown that the gun had to be manually reloaded after each firing, and in order to fire the gun, the hammer had to be cocked and the trigger pulled. Shotgun pellet holes were found in a curtain over a broken window above the kitchen sink, the window ostensibly broken out by the shotgun pellets. The deceased's body was found lying on the floor in a large pool of blood, in close proximity to the broken window. The officers found no gun cleaning equipment in the trailer. Other proof offered by the State showed that the physical evidence present was inconsistent with the defendant's version of the shooting.

The evidence in this case does not comport with the defendant's insistence that this was an accidental shooting. Neither is there any evidence in this case to show that the defendant killed the deceased while laboring under any heat of passion upon adequate provocation. The State has negated these lesser degrees of homicide by proving the elements of second degree murder beyond a reasonable doubt.

In our opinion, the jury had before it ample evidence, apart from the effect of the judge's instruction on the presumption of malice arising from the use of a deadly weapon, from which the jury could find that the State had carried its burden of showing malice beyond a reasonable doubt.

We find no merit to the complaint regarding the court's charge to the jury and overrule the assignment predicated thereon.

▋ Finally, the defendant makes some additional complaints about the legal sufficiency of the convicting evidence and about his conviction for second degree murder. Further, he complains that the verdict was so excessive as to show "caprice and whim" on the part of the jury. Other than relating these additional assignments to the basic complaint which he has made about the court's charge on the presumption of malice, he presents no brief or argument in support of these additional assignments; accordingly, these assignments are overruled. *Roberts v. State,* 4 Tenn.Cr.App. 537, 474 S.W.2d 165 (1971).

▋ We have heretofore reviewed some of the evidence in connection with our ruling on the defendant's second complaint. From our review of the entire proof, we are of the opinion that the evidence is amply sufficient to support the defendant's guilt of murder in the second degree. The evi-

dence does not preponderate against the verdict of the jury. *McBee v. State,* 213 Tenn. 15, 372 S.W.2d 173 (1973). Further, the punishment imposed by the jury was within the limits allowed by law; thus, it cannot be said that the verdict indicates passion, prejudice or caprice. *Carroll v. State,* 212 Tenn. 464, 370 S.W.2d 523 (1963).

We find no errors in this record. Accordingly, we affirm the judgment of the trial court.

WALKER, P. J., and DWYER, J., concur.