IN THE MATTER OF                )
WAYNE H.                        )        Appeal No.
                                )        01-A-01-9807-CV-00383
                                )
                                )        Williamson Circuit
                                )        No. II-152-698

**FILED**

**August 20, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE


APPEAL FROM THE CIRCUIT COURT FOR WILLIAM COUNTY,

AT FRANKLIN, TENNESSEE


THE HONORABLE TIMOTHY EASTER, JUDGE


JOHN P. CAULEY
Assistant Public Defender
407-C Main Street
P. O. Box 68
Franklin, Tennessee  37065-0068
        ATTORNEY FOR APPELLANT


PAUL G. SUMMERS
Attorney General & Reporter

DARYL J. BRAND
Associate Solicitor General
425 Fifth Avenue North
Nashville, Tennessee  37243
        ATTORNEYS FOR STATE OF TENNESSEE


AFFIRMED AND REMANDED


WILLIAM B. CAIN, JUDGE

# O P I N I O N

In April of 1998 Appellant, Wayne H. was a fourteen year old child enrolled in the Williamson County School District as a special education student. For reasons not detailed in the record, he had been under the supervision of the Davidson County Juvenile Court. His case manager, Lloyd Jernigan of the Dee Dee Wallace Center, arranged for him to live with his maternal grandmother in Williamson County. Upon moving to his grandmother's home he was enrolled in Williamson County's Page Middle School in special education class for children with behavioral problems.

On April 22, 1998, three days after enrolling in Page School, Mrs. Marty Haselden, Assistant Principal, was informed that Wayne had been seen displaying a pocket knife in the lunchroom. Page Middle School had a "zero tolerance" policy regarding weapons at school. In Mrs. Haselden's office Wayne confirmed that he had a knife and gave it to her. He asserted that he had not meant to bring the knife to school but had borrowed his cousin's jacket and had only discovered at lunchtime that there was a knife in the pocket. Mrs. Haselden then told Wayne that she had heard that two days earlier, on his first day at Page Middle School, he had been displaying a knife on the school bus. Wayne admitted that he also had a knife on that day and said that he had brought it to school to impress people because he was new at the school. He further acknowledged that he knew it was wrong to have a knife in his possession at school.

After the Page School incident, Wayne H. was sent to the Alternative Learning Center which is located in the same building as the Williamson County Juvenile Detention Center. The ALC is a facility for continuing the education of students who have been suspended from school for unruliness or similar problems. Wayne H.'s behavior at ALC was less than satisfactory and he often cursed and refused to do his school work. He was taking medications for impulsive behavior and attention deficit disorder. After an incident in which he cursed his teacher, Ms. Ruth Paily, he was placed in the detention center for a few hours. His grandmother was not cooperative with the ALC program and it

was determined that a "home suspension" for him would not be appropriate.

The parties stipulated that Williamson County Juvenile Detention Center is operated in compliance with and even surpasses the requirements of state and federal law.

On April 29, 1998, Mrs. Haselden filed a petition in the Juvenile Court of Williamson County alleging that Wayne H. had committed the delinquent act of carrying a weapon on school property.

On May 15, 1998, Mrs. Ruth Paily filed a petition alleging that Wayne H. had violated rules at ALC and his conduct amounted to unruly behavior.

The case was heard on June 11, 1998, in the Juvenile Court of Williamson County. The ALC determined not to prosecute the unruly behavior petition and the court then retired the petition. The juvenile court found that upon his plea of "true" to the charge of carrying a weapon on school property that he was a delinquent child. The court sentenced Wayne to serve two days in the juvenile detention center and suspended his driver's license for one year.

Wayne H. timely appealed to the circuit court and a de novo hearing was held on July 20, 1998. The circuit court found that Wayne had committed the delinquent act alleged, and affirmed the judgment of the juvenile court including the disposition of the case. The judgment of the circuit court was entered July 22, 1998 and Wayne H. timely appealed.

The first issue raised on appeal challenges the sufficiency of the evidence to prove that the appellant possessed the weapon on school property with the intent to go armed.

The original petition in the juvenile court charged that:
"ON OR ABOUT APRIL 22, 1998 IN WILLIAMSON COUNTY, TN, SUBJECT WAS FOUND IN POSSESSION OF A POCKET KNIFE AT PAGE MIDDLE SCHOOL. THIS OFFENSE CONSTITUTES THE DELINQUENT

CHARGE OF CARRYING A WEAPON ON SCHOOL PROPERTY (Class E Felony per T.C.A. 39-17-1309, et al)."

The order of the circuit court, following a de novo hearing on appeal from the juvenile court, provided in part: "The trial court having had the benefit of the original petition, the testimony of witnesses, argument of counsel for the respective parties and the entire record in this cause finds that the allegations contained in said petition are proven beyond a reasonable doubt." Appeal was taken first to the court of criminal appeals but was transferred to this court because of Tennessee Code Annotated section 37-1-159.

Tennessee Code Annotated section 39-17-1309 specifically addresses carrying weapons on school property and declares the carrying of a weapon with intent to go armed is a Class E Felony. The conduct charged in this case, if committed by an adult, would subject such adult to criminal liability. Where a juvenile is concerned violation of Tennessee Code Annotated section 39-17-1309 is a "delinquent act". Tenn. Code Ann. § 37-1-102(b)(9).

Neither Rule 13(d) nor Rule 13(e) of the Rules of Appellate Procedure envision appellate review of the hybrid created by Tennessee Code Annotated section 37-1-133 wherein it provides in part: "(a) An order of disposition or other adjudication in a proceeding under this part is not a conviction of crime and does not impose any civil disability ordinarily resulting from a conviction or operate to disqualify the child in any civil service application or appointment."

Rule of Appellate Procedure 13(d) involving appeals in civil actions provides that in nonjury cases the findings of fact by the trial court are accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. Rule 13(e) of the Rules of Appellate Procedure governs appeals in criminal actions under which a finding of guilt, either by the trial court or by a jury, "... shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."

While Tennessee Code Annotated section 37-1-133 specifically mandates

that a finding of delinquency is not criminal, it is well to observe that common law, statutory and constitutional principles protect the rights of juveniles in the same manner as they protect the rights of adults. In *State v. Johnson*, 574 S.W.2d 739 (Tenn. 1978) it is said:

> Despite this stated purpose and the theory underlying the juvenile court system, however, courts in recent years have emphasized that in practical effect persons involved in juvenile proceedings may be deprived of their liberty. Increasingly, concepts of the criminal law, and in particular constitutional principles designed to protect the rights of individual charged with crime, have been deemed to be applicable to proceedings involving juvenile offenders.

574 S.W.2d 739, 741.

Earlier the supreme court in *State ex rel. Anglin v. Mitchell*, 596 S.W.2d 779 had dealt primarily with the right of a juvenile faced with loss of liberty to be tried by an attorney judge. The court observed:

> This Court unanimously declared in *Patrick v. Dickson*, 526 S.W.2d 449 (Tenn. 1975):
> Indeed, the entire juvenile court structure, despite recent renovations and innovations, continues to constitute, in a large measure, a junior criminal court.
> This characteristic of these courts was recognized by the Supreme Court of the United States in *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), wherein the Court points out that "there is a gap between the originally benign conception of the system and its realities" and observes that recent cases require "that [the] courts 'eschew the "civil" label of convenience which has been attached to juvenile proceedings' and that the juvenile process ... be candidly appraised." 526 S.W.2d at 451.

596 S.W.2d 779, 784.

A delinquent child may be fined, ordered to pay restitution, placed on probation or committed to the custody of the Department of Corrections. *Doe v. Norris,* 751 S.W.2d 834.

Tennessee Code Annotated section 37-1-129(b) demands proof beyond a reasonable doubt before the court may find delinquency. The "delinquent act" in the case at bar is a felony when committed by an adult. *See* T.C.A. § 37-1-102(b)(9) and T.C.A. § 39-17-1309.

So it is that in view of Tennessee Code Annotated section 37-1-133, this hybrid fits directly into neither 13(d) or 13(e) of the Rules of Appellate Procedure.

Rule 2 of the Rules of Appellate Procedure provides in part: "For good cause, including the interest of expediting decision upon any matter, the supreme court, court of appeals, or court of criminal appeals may suspend the requirements or provisions of any of these rules in a particular case on motion of a party or on its motion and may order proceedings in accordance with its discretion, ..."

Rule 13(d) of the Rules of Appellate Procedure provides in pertinent part "unless otherwise required by statute, ..." review will be in accordance with its provisions. Proof beyond a reasonable doubt on a delinquency petition is mandated by Tennessee Code Annotated section 37-1-129(b). It cannot be that a juvenile is entitled to be judged on a standard of proof beyond a reasonable doubt in the trial court and then subjected to any lesser standard on appeal. It may be that review under Rule 13(d) can be made compatible with a reasonable doubt standard just as it has been made compatible with a "clear and convincing evidence" standard. *See In re: M.D.*, 658 S.W.2d 112, 115 (Tenn. App. 1983) and *In re: Adoption of Self*, 836 S.W.2d 581, 582 (Tenn. 1992). We prefer, however, to simply apply a reasonable doubt appellate standard whereby the trial court judgment must be set aside if we find the evidence insufficient to support guilt beyond a reasonable doubt.

Under the reasonable doubt standard the supreme court has stated:

> When the sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see* Tenn.R.App.P. 13(e). A jury verdict approved by the trial judge credits the testimony of the witnesses for the State and resolves all conflict in favor of the State's theory. *State v. Williams*, 657 S.W.2d 405, 410 (Tenn.1983), *cert. denied*, 465 U.S. 1073, 104 S.Ct. 1429, 79 L.Ed.2d 753 (1984); *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn.1978). On

> appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978). A verdict against the Defendant removes the presumption of innocence and raises a presumption of guilt on appeal, *State v. Grace*, 493 S.W.2d 474, 476 (Tenn.1973), which the Defendant has the burden of overcoming. *State v. Brown*, 551 S.W.2d 329, 331 (Tenn.1977).

*State v. Evans*, 838 S.W.2d 185, 190-91 (Tenn. 1992).

The defendant pleaded "true" in the juvenile court to the allegation that he carried a knife on school property. The only disputed question is whether or not the evidence establishes, beyond a reasonable doubt, that he did so with the intent to go armed.

The mental state of carrying a weapon with intent to go armed may be proved by circumstances surrounding the carrying of the weapon. *Bennett v. State*, 530 S.W.2d 788, 792 (Tenn. Cr. App. 1975). Intent to go armed cannot be presumed from mere possession of a weapon and it is improper to instruct a jury regarding such a presumption. *Liming v. State*, 220 Tenn., 371, 382, 417 S.W.2d 769, 774 (1967). Intent to go armed may be inferred by the trier of fact from the circumstances of the case including the fact of the possession of the weapon. *State v. Washington*, 658 S.W.2d 144, 146 (Tenn. Cr. App. 1983); *Cole v. State*, 539 S.W.2d 46, 49 (Tenn. Cr. App. 1976).

The proof shows that Wayne H. admitted that he possessed the knife on school premises. He admitted that he had displayed a knife two days earlier on the school bus. He acknowledged that he knew it was wrong to have a knife in his possession at school. He explained his earlier possession of the knife by asserting that he was new and wished to impress people at Page Middle School. On April 22, he was seen displaying a knife in the school cafeteria. His explanation about borrowing his cousin's coat would hardly impress any rational trier of fact.

Viewed as it must be in the light most favorable to the state, the evidence supports the finding of the trial court beyond a reasonable doubt that Wayne H.

carried the knife on school grounds with the intent to go armed.

Appellant next asserts that he was denied the right to a fair trial because the circuit court considered the juvenile court's final order as evidence of guilt. The record does not support this assertion. It was not the findings of the juvenile court but the plea of "true" to the charge by the defendant that was the subject of the inquiry of counsel by the circuit judge. The circuit court conducted a de novo hearing and heard testimony from witnesses and arguments of counsel for four and one-half hours before announcing its' findings of guilt.

Appellant was not denied his right to a fair trial.

The next issue raised by Appellant involves the hearsay statements by which Mrs. Haselden was informed of the previous knife carrying incident two days earlier on the school bus. It is not the hearsay statements of Mrs. Haselden's informant but the admission of the defendant in response thereto that incriminates him. In the sequence of events Mrs. Haselden had brought Wayne to her office to inquire about the cafeteria incident. He promptly admitted the incident and turned the knife over to her with his explanation that he had borrowed his cousin's coat and found the knife in the pocket. It was at this point that Mrs. Haselden informed him of her information about the school bus incident two days earlier. He thereupon admitted the school bus knife display incident and that he was carrying the knife to impress people. These admissions under Tennessee Rule of Evidence 803(1.2) were not only admissible but were subject of no objection by counsel. If the statement of Mrs. Haselden's informant was hearsay, the error is harmless beyond a reasonable doubt and not a basis for reversal. Rule 36(b) Rules of Appellate Procedure.

The court of criminal appeals has correctly held:

One who wishes his affairs to remain secret should not impart information concerning them to a friend, a banker, or even a tape recorder in the Oval Office of the President of the United States. Once having been voluntarily made, admissions against interest to a non-privileged party may be used against the declarant whether the admissions take the form of an oral or written confession, a letter to a relative, a recorded conversation, a deposit slip given to

a teller at a bank, or any of the literally hundreds of forms communications take. While the Fifth Amendment to the United States Constitution protects one against compulsory furnishing of evidence against oneself, it does not extend to non-privileged communications to third parties.

*Sheets v. Hathcock,* 528 S.W.2d 47, 50 (Tenn. Cr. App. 1975).

This issue is without merit.

Appellant next complains that the use of the juvenile detention center as a place of confinement is an unlawful use of that facility. First of all the trial court had found the defendant, guilty beyond a reasonable doubt of carrying a weapon for the purpose of going armed on school property. The sentence ordered was a forty-eight hour detention in the juvenile detention center and the suspension of his driver's license for a period of one year. The court further found that short-term detention in the juvenile detention center would be suitable as a rehabilitative effort. Dr. Gail Colvert, director of the ALC, testified that such short-term detention was not punishment alone but rehabilitative in effect. It was thus "... a program of treatment, training and rehabilitation ..." *See* Tenn. Code Ann. § 37-1-101. Tennessee Code Annotated section 71-3-501 provides: "'Detention center' means a place or facility operated by any entity or person, governmental or otherwise, for the confinement in a hardware secure facility of a child or children who meet the criteria of section 37-1-114(c) or other applicable laws ..." Tenn. Code Ann. § 71-3-501(b)(16)(Supp. 1998).

Tennessee Code Annotated section 37-1-131(a)(3) is sufficiently broad in scope to include juvenile detention centers as suitable for juveniles "in need of legal temporary placement".

This issue is without merit.

Finally, appellant asserts that officials of Page Middle School failed to comply with the Individuals With Disability's Education Act. ("IDEA") 20 U.S.C. sec. 1400, et seq. and with regulations adopted by the Tennessee Board of Education pursuant to Tennessee Code Annotated section 49-10-101(c)(1998)

to effect compliance with IDEA.

This issue is raised for the first time in this Court and was neither presented to nor adjudicated by the trial court. It has been effectively waived by the appellant. Tenn. R. App. P. 36(a); *Simpson v. Frontier Community Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991).

Regardless of waiver we find this issue to be without merit. The principal case relied upon is the unreported decision of the court of appeals in the case of *In re: Tony McCann*, C.A. No. 158, 1990 WL 16883 (Tenn. Ct. App. July 30, 1990). In that case, the court was dealing with a de novo review of a finding in the trial court that a handicapped child was unruly. The court of appeals reversed, holding that "... school discipline problems and a student's failure to perform assignments must be addressed within the administrative framework of the school system before the school system can resort to court intervention." In re: *McCann* 1990 WL 16883 at *3. The *McCann* case involved only a finding of unruliness under what is now codified as Tennessee Code Annotated section 37-1-102(b)(23). In this case, the defendant has been found guilty of a delinquent act under Tennessee Code Annotated section 37-1-102(b)(9). This delinquent act was a felony, not an unruly disciplinary problem. The appellant had been a student at Page School only three days when the delinquent act occurred.

Under Tennessee Code Annotated section 37-1-128(c)(1), the most that can be said is that evaluation for treatment of special education students may be undertaken by the trial court before disposition is made of a child who has been adjudicated delinquent. Tenn. Code Ann. § 37-1-128(c)(1)(1996).

The judgment of the trial court is in all respects affirmed and the case is remanded to the Juvenile Court of Williamson County. It has now been over a year since the adjudication of delinquency and the sentence of forty-eight hours detention. Remand is without prejudice to the right of the juvenile court to revisit the disposition issue if intervening events justify either reduction of the

sentence or an evaluation process under Tennessee Code Annotated section 37-1-128(c)(1).

Costs are assessed against the appellant.

_____
WILLIAM B. CAIN, JUDGE

CONCURRING UNDER
SEPARATE OPINION
WILLIAM C. KOCH, JR., JUDGE

CONCUR:

_____
BEN H. CANTRELL, P.J., M.S.