FILED

05/04/2017

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 7, 2017

**STATE OF TENNESSEE v. CHRISTOPHER JOHNSON**

**Appeal from the Circuit Court for Hardin County**
**No. 9841     Charles C. McGinley, Judge**

_____

**No. W2016-00346-CCA-R3-CD**

_____

The Defendant, Christopher Johnson, was convicted by a Hardin County Jury of possession of mushrooms with intent to manufacture, deliver, or sell, possession of mushrooms, possession of drug paraphernalia, and unlawful possession of a weapon by a convicted felon. As a Range II, multiple offender, he received an effective sentence of fifteen years in the Tennessee Department of Correction. On appeal, the Defendant claims: (1) the evidence is insufficient to sustain his conviction of unlawful possession of a weapon by a convicted felon; (2) the trial court improperly denied his motion to suppress; (3) the trial court improperly admitted a redacted audio recording of the Defendant's interview with police at trial; and (4) the State committed prosecutorial misconduct by failing to provide discoverable evidence and improperly quoting a witness during closing argument. Upon review, we affirm the judgments of the trial court but remand for entry of a corrected judgment form as to count four reflecting that the Defendant was found not guilty of possession of marijuana.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed
and Remanded for Entry of Corrected Judgment**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and J. ROSS DYER, JJ., joined.

W. Taylor Hughes, Jackson, Tennessee, for the Defendant-Appellant, Christopher Johnson.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Matthew F. Stowe, District Attorney General; and Joshua C. Turnbow, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

On March 17, 2014, the Hardin County Grand Jury returned a six-count indictment charging the Defendant with possession of mushrooms with intent to manufacture, deliver, or sell in count one, possession of LSD with intent to manufacture, deliver, or sell in count two, possession of mushrooms in count three, possession of less than 0.5 ounces of marijuana in count four, possession of drug paraphernalia in count five, and unlawful possession of a weapon by a convicted felon in count six. The indictment for count six listed two prior felony drug convictions that occurred in Shelby County in 1999. Count one occurred on November 15, 2013, and counts two through six occurred on January 3, 2014. The Defendant was also indicted with a co-defendant, Rebecca Pickens, on counts one through five, and count two was dismissed before trial.[1] On April 7, 2014, the Defendant filed a motion to suppress evidence seized during the searches performed on November 15, 2013, and January 3, 2014. The Hardin County Circuit Court held an evidentiary hearing on May 15, 2014.

**Suppression Hearing.** Officer Rodney Pannell testified that he worked for the Iuka, Mississippi police department and that, on November 15, 2013, the Defendant was arrested in Mississippi for various firearm and drug offenses, including possession of mushrooms. The Defendant told the Mississippi officers that he had more mushrooms in a motel room in Tennessee where he lived. After the Defendant was arrested, Officer Pannell drove the Defendant to Tennessee to meet with officers in Hardin County. Officer Pannell testified that the Defendant was in the custody of the Mississippi officers the entire time and that, after turning over the mushrooms in his motel room, the Defendant was taken back to jail in Mississippi. On cross-examination, Officer Pannell confirmed that he had spoken with the Defendant about becoming a criminal informant ("CI") and that the officers released the Defendant on his own recognizance so that he could work for them. Officer Pannell acknowledged that he told the Defendant his charges would be reduced "to almost nothing" if he contributed successfully as a CI.

Jason Caldwell, an officer with the Hardin County Sheriff's Department, testified that he was assigned to the 24th Judicial District Drug Task Force. Officer Caldwell recalled that Officer Pannell contacted him about an individual in custody in Mississippi who "could do some stuff possibly for [Officer Caldwell] up here in Hardin County." Officer Caldwell met Officer Pannell and the Defendant at the Defendant's motel room in Hardin County. The Defendant agreed to sign a consent to search form and officers seized approximately eight ounces of mushrooms in the motel room where the Defendant and his girlfriend, Rebecca Pickens, were living at the time. Officer Caldwell testified

---

[1] The record reflects that count two, possession of LSD with intent to manufacture, deliver, or sell, was dismissed "because the effective date that [LSD] became a scheduled drug was after the date that [the Defendant] was charged." Before dismissing the charge, the trial court granted the State's motion to amend count two of the indictment to change the drug name from "LSD" to "25C-NBOMe" pursuant to the TBI lab results.

that, after the search, the Mississippi officers took the Defendant back in to custody and Officer Caldwell "was going to proceed with . . . charges [against the Defendant] and possibly give him a chance to be a CI" because they were "interested in his supplier that he had in Florida." Officer Caldwell also testified that the Defendant signed an "extradition form" in which the Defendant gave "permission to be brought across state lines to the Sheriff's Department here in Hardin County."[2] A few days later, the Defendant was brought back to Tennessee for an initial interview with Officer Caldwell and was signed up as a CI. Officer Caldwell testified that he communicated with the Defendant and met with him several times but that the Defendant "failed to produce." Officer Caldwell then issued a warrant for the Defendant's arrest and found more drugs and paraphernalia in plain view while arresting the Defendant at his motel room. Officer Caldwell testified that the Defendant signed another consent to search form for the second search. Officers seized "approximately a hundred hits of LSD and some more mushroom material and some marijuana, and also a firearm." At the time of the Defendant's arrest, there were two other individuals also arrested in his motel room, Pickens and Levi Gary.[3] Officer Caldwell testified that Gary claimed responsibility for the marijuana but that no one else claimed any other drugs or the gun.

On cross-examination, Officer Caldwell acknowledged that the Defendant did not sign the extradition form until after the Mississippi officers drove the Defendant to Tennessee and his motel room was searched. Officer Caldwell explained that, although the Defendant had not been charged with anything when he signed the extradition form, he had "pending charges" and Officer Caldwell was "holding" the charges while the Defendant worked as a CI. Officer Caldwell stated that he did not obtain a search warrant for the first search of the Defendant's motel room because the Defendant voluntarily met Officer Caldwell and consented to the search. Officer Caldwell did not obtain a search warrant for the second search because the contraband was "in plain sight" when he entered the motel room to arrest the Defendant. Officer Caldwell also testified that he never told the Defendant that his charges would go away in exchange for his work as a CI.

The Defendant testified that from November 14, 2013, to January 3, 2014, he believed he was working as a CI for Officer Caldwell. The Defendant claimed that he provided Officer Caldwell with information about drug dealers in Hardin County and that he signed both consent to search forms because he believed he was still a CI. On cross-examination, the Defendant confirmed that he voluntarily signed both consent to search

---

[2] Although the record reflects that the extradition waiver was admitted as an exhibit at the suppression hearing, none of the exhibits to the suppression hearing were included in the record on appeal.

[3] The parties refer to Gary as a co-defendant; however, the record does not reflect that Gary was indicted with the Defendant and Pickens.

forms as well as an extradition waiver signed on November 15, 2013 and that no one forced him to sign the forms.

The trial court denied the motion to suppress and found that the Defendant was not coerced into signing the consent to search forms or the extradition waiver and that there was "nothing in this record . . . that invalidates the consent." The court entered a written order denying the motion on September 8, 2014.

**Trial.** At the April 27, 2015 trial, Officer Jason Caldwell testified consistently with his testimony at the suppression hearing. Additionally, Officer Caldwell testified that, when he first met the Defendant at the motel in Hardin County, the Defendant informed Officer Caldwell that "he had some mushrooms that he wanted to turn over to [Officer Caldwell] because he didn't want his girlfriend or anybody else to come to the residence and take possession of them." Officer Caldwell seized the mushrooms, which were in vacuum sealed bags and weighed about eight ounces "or 200-something grams." Officer Caldwell testified that, after the mushrooms were seized, the Defendant left and they did not meet again until the Defendant was brought in for an interview at the Hardin County Correctional Facility later that night. Before the interview, Officer Caldwell read the Defendant his rights and the Defendant signed a waiver of rights form. A redacted version of the interview was played for the jury and admitted as an exhibit at trial, although it was not included in the record on appeal.[4] Officer Caldwell testified that this was the first case of mushrooms he had seen in his law enforcement career.

After the interview, Officer Caldwell decided to work with the Defendant as a CI because of the Defendant's connections selling drugs both locally and regionally. Officer Caldwell told the Defendant that, as a CI, he would still be liable for his actions and that he was not "protected or covered in any . . . manner." Officer Caldwell stated that he never promised the Defendant anything in return for his work as a CI but he did tell the Defendant that if he produced, then Officer Caldwell would advise the district attorney accordingly. After Officer Caldwell signed the Defendant up as a CI, he stayed in contact with him for "about a 50[-]day period." Officer Caldwell testified that the Defendant was not producing any information and was given "a cutoff date," which he did not meet. Officer Caldwell then executed an arrest warrant charging the Defendant with possession of the mushrooms seized on November 15, 2013, which he served on the Defendant at his motel room on January 3, 2014.

When the Defendant answered the door, Officer Caldwell handcuffed him and other officers cleared the motel room for safety. Officer Caldwell testified that the

---

[4] The record on appeal indicates that the recorded interview was "retained by [the] clerk's office," and, although it is identified on the trial exhibit list, the interview is not included in the record.

officers found, in plain view on a coffee table, "some mushroom type material, a grinder and some marijuana." Officer Caldwell then asked the Defendant for consent to search the motel room and the Defendant agreed and signed another consent to search form. During the search, Officer Caldwell found "some shells to a pistol" and asked the Defendant "where is the gun?" Officer Caldwell testified that the Defendant responded, "it's under the couch where I was asleep." Officer Caldwell found the gun "directly underneath the couch where [the Defendant] was at." As a result of the search, officers also found "an amount of marijuana, some drug paraphernalia . . . and also some more mushroom material." After the Defendant was arrested, Officer Caldwell monitored the Defendant's phone calls made from jail. The prosecution played one of the recorded phone calls for the jury and the recording was admitted as an exhibit at trial.[5]

On cross-examination, Officer Caldwell acknowledged that, in his recorded interview with the Defendant, the Defendant never mentioned whether he intended to sell the mushrooms. However, Officer Caldwell explained that the Defendant did say that "he got $350 an ounce for the mushrooms" when they first met at the motel in Hardin County. Officer Caldwell testified that Gary, who was in the motel room when the Defendant was arrested, claimed the marijuana and pled guilty to possession of marijuana. Officer Caldwell also acknowledged that Pickens claimed ownership of the gun and that the Defendant asked Pickens where the gun came from and what kind of gun it was. However, Officer Caldwell stated that "with [the Defendant] being asleep on the couch with the gun directly underneath him and him having knowledge of where it was at he possessed that gun." When asked how many phone calls he monitored while the Defendant was incarcerated, Officer Caldwell responded "probably 15 or 20" but explained that only one was relevant to the case because in that call the Defendant stated "he should have been a lawyer instead of a drug dealer."

Special Agent Shalandus Garrett, a forensic scientist employed by the Tennessee Bureau of Investigation ("TBI"), tested the mushrooms seized on November 15, 2013. Agent Garrett performed an instrumental analysis on the mushrooms and was able to determine that "it was psilocybin and/or psilocin." The total weight of the mushrooms was 228.51 grams.

Special Agent Peter Hall, a forensic scientist employed by the TBI, tested marijuana, mushrooms, and drug paraphernalia seized on January 3, 2014. The marijuana weighed 4.37 grams and the mushrooms, which tested positive for psilocin or

---

[5] Again, the record on appeal indicates that the recorded phone call was "retained by [the] 24th Drug Task Force," and, although it is identified on the trial exhibit list, the call is not included in the record.

psilocybin, weighed .05 grams. Agent Hall testified that there was also 5.84 grams of additional mushroom material that was not tested.

The State rested and the defense called Rebecca Pickens, who testified that she was a co-defendant in the instant case and the Defendant's fiancé. Pickens pled guilty to possession of mushrooms but was not charged with any crime regarding the gun found in the Defendant's motel room. Pickens testified that the gun was hers and that she purchased it from a friend two years ago. Pickens also testified that she put the gun under the couch and that she did not know if the Defendant knew where the gun was prior to his arrest. When she was arrested, Pickens told Officer Caldwell that she did not have any weapons because she was nervous and had just woken up. Pickens stated that she had been dating the Defendant for about one year and had never seen him sell, deliver, or manufacture mushrooms. Pickens also acknowledged that she, the Defendant, and Gary all lived in the motel room and did drugs together regularly.

On cross-examination, Pickens testified that officers found the gun by "looking everywhere, throwing cushions, pushing the couch back," and that she did not think the Defendant told them where the gun was. Pickens also acknowledged that she had not told anyone that the gun was hers until her testimony at trial.

The Defendant testified that he moved from Florida to Tennessee and that he "had some mushrooms that [he] had brought from Florida." The Defendant stated that he never sold or tried to sell the mushrooms. The Defendant also testified that he never told Officer Caldwell that the mushrooms were "$350 per ounce" during their initial meeting at the motel. The Defendant stated that he paid about a thousand dollars for the two bags of mushrooms and that he would consume them all in "[a]bout a weekend" by "boiling them" and "mak[ing] Kool-Aid out of it." The Defendant admitted he was consuming more mushrooms the night before his arrest but insisted that the marijuana and gun were not his. The Defendant testified that he knew Pickens had a gun but did not know she was keeping it under the couch.

Special Agent Michael Woodham, a criminal investigator employed by the United States Department of Justice's Drug Enforcement Administration ("DEA"), testified as a rebuttal witness for the State. Agent Woodham testified that his duties for the DEA included enforcing the federal Controlled Substance Act as well as Tennessee state laws pertaining to drugs. Agent Woodham testified that he had been in law enforcement for thirty-five years, including twenty-four years as a DEA Agent. Agent Woodham testified that he had seen mushroom cases but that they were "relatively rare in Middle and West Tennessee." When asked what constituted "a hit or dose of mushrooms," Agent Woodham stated that "[f]rom my research[,] a common dosage would run 6 to 20 milligrams. Of course it depends on the individual. So it could range as much as 40

milligrams per hit or dosage unit." Agent Woodham testified that, based on an average 13 milligram dose, a quantity of 228 grams of mushrooms would contain "17,596 dosage units." Agent Woodham explained that, considering "the effects last[] from 4 to 6 hours," this dosage amount would allow a person to "stay high for over ten years[,] 24 hours, 7 days a week." Agent Woodham testified that, using a stronger dosage unit, the mushrooms could contain as few as 5,712 total doses or, using a weaker dosage unit, as many as 38,085 doses. When asked what would happen if someone "did all of these 228 grams in one weekend," Agent Woodham stated that he had "never known of a case of overdose" but that it would probably cause "psychedelic hallucinations" and "would probably fry your brain although it [sic] may not be any physical death or anything associated with it."

On cross-examination, Agent Woodham clarified that his research came from "[s]cholarly [j]ournals and research provided to [him] by the [DEA]." Agent Woodham acknowledged that different types or species of mushrooms have different levels of psilocybin and that the 6 to 20 milligram measurement actually referred to milligrams of psilocybin, not milligrams of mushroom material. Agent Woodham testified that there was no way to know how much psilocybin was in the mushrooms in this case without "a qualitative analysis by a chemist."

At the conclusion of the testimony, the jury found the Defendant guilty of all charges except the possession of marijuana. At the May 21, 2015 sentencing hearing, the trial court sentenced the Defendant to fifteen years' incarceration for possession of mushrooms with intent to manufacture, deliver, or sell; eleven months and twenty-nine days' incarceration each for both possession of mushrooms and possession of drug paraphernalia; and six years' incarceration for unlawful possession of a weapon by a convicted felon. The court sentenced the Defendant as a Range II, multiple offender and ordered the sentences to run concurrently, for an effective sentence of fifteen years. On June 5, 2015, the Defendant filed a motion for new trial, followed by two amended motions for new trial. An evidentiary hearing was held on January 14, 2016, and the trial court denied the Defendant's motion by written order on February 12, 2016. This timely appeal follows.

## ANALYSIS

On appeal, the Defendant argues that (1) the evidence was insufficient to support his conviction of unlawful possession of a weapon by a convicted felon; (2) the trial court improperly denied his motion to suppress; (3) the trial court improperly admitted a redacted audio recording of the Defendant's interview with police at trial; and (4) the State committed prosecutorial misconduct by failing to provide discoverable evidence and improperly quoting a witness during closing argument.

**1. Sufficiency of the Evidence.** First, the Defendant argues that the evidence was insufficient to support his conviction of unlawful possession of a weapon by a convicted felon. Specifically, the Defendant contends that the State did not prove beyond a reasonable doubt that he had possession of the gun. The State responds that the evidence is sufficient to establish that the Defendant possessed the gun.

"Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009) (citing State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992)). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Parker, 350 S.W.3d 883, 903 (Tenn. 2011) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); see Tenn. R. App. P. 13(e). When this court evaluates the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Sutton, 166 S.W.3d 686, 691 (Tenn. 2005); State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting Hanson, 279 S.W.3d at 275). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Circumstantial evidence alone may be sufficient to sustain a conviction. State v. Sisk, 343 S.W.3d 60, 65 (Tenn. 2011). The jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court shall not substitute its inferences for those drawn by the trier of fact. Id.

In order to sustain the Defendant's conviction, the State was required to prove that the Defendant "unlawfully possesse[d] a firearm . . . and [h]as been convicted of a felony drug offense." T.C.A. § 39-17-1307(b)(1)(B). The State and defense counsel stipulated

at trial that the Defendant is a convicted felon, and the Defendant does not dispute that he had prior felony drug convictions; he only challenges his possession of the gun.

In Tennessee, possession may be either actual or constructive. State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001). A person constructively possesses contraband when he or she has "the power and intention at a given time to exercise dominion and control over [the contraband] either directly or through others." Id. at 903 (quoting State v. Patterson, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997)). Said differently, constructive possession is the "ability to reduce an object to actual possession." State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987).

Viewed in the light most favorable to the State, we conclude that the evidence was sufficient to support the Defendant's conviction. The proof at trial revealed that the gun was found in the motel room where the Defendant was living and, specifically, was located under the couch where the Defendant had been sleeping immediately prior to his arrest. Officer Caldwell testified that the Defendant told him where the gun was located when he asked. Although Pickens later acknowledged ownership of the gun, she did not claim ownership of the gun until her testimony at trial. Furthermore, the Defendant testified that he knew Pickens had the gun. Based on all of the above, a rational juror could have found that the Defendant was in possession of the gun in this case. Accordingly, the Defendant is not entitled to relief.

**2.** **Motion to Suppress.** Next, the Defendant contends that the trial court improperly denied his motion to suppress the evidence obtained from both searches of his motel room because he was illegally transported to Tennessee without extradition procedures and because his consent to both searches was not entered knowingly, freely, or voluntarily. The State argues that no extradition proceedings were required and that the Defendant's consent was voluntarily given and not physically or psychologically coerced, as the Defendant contends.

When reviewing a trial court's findings of fact and conclusions of law on a motion to suppress evidence, this court is guided by the standard of review recognized in State v. Odom, 928 S.W.2d 18 (Tenn. 1996). Pursuant to this standard, a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise. Id. at 23. The prevailing party in the trial court "is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Id. Moreover, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Id. Despite the deference given to the trial court's findings of fact, this court reviews the trial court's application of the law to the facts de novo with no presumption of correctness.

State v. Montgomery, 462 S.W.3d 482, 486 (Tenn. 2015) (citing State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001)); State v. Day, 263 S.W.3d 891, 900 (Tenn. 2008) (citing State v. Williams, 185 S.W.3d 311, 315 (Tenn. 2006); State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997)). When reviewing the correctness of a trial court's ruling on a motion to suppress, this court may consider not only the evidence presented at the suppression hearing but also the evidence adduced at trial. State v. Henning, 975 S.W.2d 290, 297 (Tenn. 1998).

The Fourth Amendment to the United States Constitution and Article 1, Section 7 of the Tennessee Constitution protect against unreasonable searches and seizures. "[U]nder both the federal and state constitutions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." Yeargan, 958 S.W.2d at 629 (citing Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971); State v. Bartram, 925 S.W.2d 227, 229-30 (Tenn. 1996)). These exceptions include: (1) stop and frisk searches; (2) searches incident to a lawful arrest; (3) searches with consent; (4) searches based on probable cause in the presence of exigent circumstances; (5) searches made in the hot pursuit of a fleeing criminal; and (6) searches of items in plain view. Day, 263 S.W.3d at 901 n.9; Bartram, 925 S.W.2d at 230 n.2. The State bears the burden of proving that one of the exceptions to the warrant requirement exists. State v. Berrios, 235 S.W.3d 99, 105 (Tenn. 2007) (citing Yeargan, 958 S.W.2d at 629).

The Defendant first argues that the evidence should have been suppressed because it was obtained as a result of his illegal transportation from Mississippi to Tennessee without proper extradition paperwork and prior to signing his extradition waiver. Specifically, the Defendant contends that, because there were no pending charges against him when he was transported to Tennessee, the transportation was illegal "as there is no authority for law enforcement officers to extradite suspects for criminal investigations." However, we agree with the State that this is simply not an extradition case. The Extradition Clause of the United States provides that:

> A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

U.S. Const. art. IV, § 2, cl. 2. This clause has been implemented by both federal law and the Uniform Criminal Extradition Act. Johns v. Bowlen, 942 S.W.2d 544, 547 (Tenn.

Crim. App. 1996). Tennessee has adopted the Uniform Criminal Extradition Act to regulate the interstate extradition of criminal defendants. T.C.A. § 40-9-101 to -130.

Here, the Defendant was not charged with any crime in Tennessee when he traveled to Hardin County from Mississippi, and Tennessee officials never requested the Defendant's transfer or return. Rather, the record reflects that the Defendant voluntarily traveled with Mississippi officers to Hardin County after admitting that he had drugs in Hardin County in an attempt to work as a CI and obtain leniency for his charges pending in Mississippi. The record also reflects that the Defendant signed a waiver of extradition form, although it was not included in the record provided on appeal.[6] The record supports the trial court's finding that the Defendant voluntarily agreed to be transported to Tennessee to surrender the drugs in his motel room and work for Hardin County officers as a CI. By doing so, the Defendant was for all practical purposes waiving extradition to Tennessee. Under these circumstances, we cannot conclude that extradition proceedings were necessary or that the officer's actions required that the evidence seized should be suppressed.

The Defendant next argues that his consent given for both searches was physically and psychologically coerced. Specifically, the Defendant claims that he was coerced into consenting to the first search because he "was in jail for over a day in Mississippi, and was promised that if he cooperated that the charges would be almost nothing." As for the second search, the Defendant claims that he only signed the consent form "because [he] had a level of trust with Agent Caldwell, and was still under the impression that he was working as a confidential informant."

"[A] law enforcement officer may search a person's residence without a warrant if the officer obtains the person's consent." State v. Ingram, 331 S.W.3d 746, 760 (Tenn. 2011) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)). A valid consent may be given "by the individual whose property is searched . . . or by a third party who possesses common authority over the premises." State v. Ellis, 89 S.W.3d 584, 592 (Tenn. Crim. App. 2000) (citing Schneckloth, 412 U.S. at 222). "In order to pass constitutional muster, consent to search must be unequivocal, specific, intelligently given, and uncontaminated by duress or coercion." State v. Brown, 836 S.W.2d 530, 547 (Tenn. 1992) (citing Liming v. State, 417 S.W.2d 769, 770 (Tenn. 1967)). "Whether an individual voluntarily consents to a search is a question of fact to be determined from the totality of the circumstances." Berrios, 235 S.W.3d at 109 (citing Schneckloth, 412 U.S. at 227; State v. Cox, 171 S.W.3d 174, 184 (Tenn. 2005)). The facts and circumstances in

_____

[6] The extradition waiver was not included as an exhibit at trial and, as noted previously, although it was listed as an exhibit at the suppression hearing, the exhibits to the suppression hearing were not included in the record on appeal.

a particular case determine whether consent is sufficient. State v. Jackson, 889 S.W.2d 219, 221 (Tenn. Crim. App. 1993). The State bears the burden of establishing that the consent was freely and voluntarily given. Id. (citing State v. McMahan, 650 S.W.2d 383, 386 (Tenn. Crim. App. 1983)).

The Defendant acknowledged at the suppression hearing that he consented to both searches and signed both consent to search forms. There was no evidence presented that the Defendant objected to the search of his motel room in either November 2013 or January 2014. Additionally, the Mississippi officers' promise of leniency has no bearing on the agreement between the Defendant and the officers in Hardin County. The proof does not preponderate against the trial court's finding that the Defendant provided consent, without reluctance, in written form, voluntarily and without coercion. Moreover, the officers found the evidence during the second search in plain view on the Defendant's coffee table before he even signed the consent to search form. The Defendant is not entitled to relief.

**3. Audio Recording.** Next, the Defendant argues that the trial court improperly admitted a recording at trial of his interview with Officer Caldwell because the recording constituted hearsay and inadmissible character evidence. The State responds that the Defendant has waived the issue by failing to provide an adequate record on appeal. We agree with the State.

Our review of this issue is foreclosed by the absence of the recorded interview in the record on appeal. The Defendant has a duty to prepare a record that conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of the appeal." Tenn. R. App. P. 24(b). The scope of appellate review is limited to the facts established in the record. Tenn. R. App. P. 13(c). "In the absence of an adequate record on appeal, we must presume that the trial court's ruling was supported by the evidence." State v. Bibbs, 806 S.W.2d 786, 790 (Tenn. Crim. App. 1991) (citing Smith v. State, 584 S.W.2d 811, 812 (Tenn. Crim. App. 1979); Vermilye v. State, 584 S.W.2d 226, 230 (Tenn. Crim. App. 1979)).

The Defendant claims that the recording, which was played for the jury at trial, constituted hearsay and inadmissible character evidence because it was offered as proof that the Defendant sold drugs in the past. Without the benefit of the recording or a transcript of the interview, we are unable to determine what was said during the interview and whether the recording is hearsay. Furthermore, the Defendant made no contemporaneous objection to the admission of the recording at trial. See Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); see also Tenn. R. Evid. 103(a)(1)

(requiring a timely objection as a prerequisite to a finding of error based on the trial court's admission of evidence). Although the trial transcript briefly refers to a pretrial motion in limine filed by the Defendant to exclude the recording, neither a transcript of the pretrial hearing nor the trial court's order denying the Defendant's motion are included in the record on appeal.[7] The extent of the court's discussion of this issue at trial concerns redacting parts of the interview which refer to the Defendant's prior felonies. Although we can infer that the trial court denied the Defendant's pretrial motion, we cannot review the court's basis for making this decision, and we cannot review the alleged hearsay statement. For these reasons, the record is inadequate for our review and the issue is waived.

**4. Prosecutorial Misconduct.** The Defendant also contends that the State committed prosecutorial misconduct by failing to provide defense counsel with recorded phone calls during discovery and by improperly quoting a witness during closing argument. The State responds that the Defendant has not proven a discovery violation, that the prosecution's statement during closing was not improper, and that the Defendant has waived these issues by failing to timely object.

First, the Defendant claims that, during Officer Caldwell's cross-examination at trial, "defense counsel learned that [O]fficer Caldwell was actually in possession of '15-20 phone calls' that were never provided to the Defendant, nor counsel." The Defendant cites Rule 16 of the Tennessee Rules of Criminal Procedure as authority granting him relief, but he provides no supporting analysis. Although the Defendant's issue is phrased in terms of prosecutorial misconduct, the petitioner is essentially arguing that the State committed a discovery violation.

Rule 16(a)(1)(B)(i) of the Tennessee Rules of Criminal Procedure governs the State's disclosure of a defendant's recorded statement. It requires the state to disclose written or recorded statements to the defendant, upon the defendant's request, and "if (I) the statement is within the state's possession, custody, or control; and (II) the district attorney general knows- or through due diligence could know- that the statement exists[.]" Tenn. R. Crim. P. 16(a)(1)(B)(i). Furthermore, "the prosecutor's duty to disclose extends not only to material in his or her immediate custody, but also to statements in possession of the police which are normally obtainable by "exercise of due diligence." State v. Hicks, 618 S.W.2d 510, 514 (Tenn. Crim. App. 1981).

---

[7] Included in the record on appeal was the Defendant's motion titled "Motion to Exclude any Testimony that Reveals a Statement made by the Defendant," which only requested a copy of the recorded interview and was filed on July 23, 2014, after the suppression hearing.

Based on the record provided, we cannot conclude that the State committed a discovery violation. The Defendant made no contemporaneous objection at trial when he elicited the information about the phone calls from Officer Caldwell on cross-examination, and counsel did not request a copy of the calls or even raise the issue until his motion for new trial hearing. Officer Caldwell testified that he informed the district attorney about the phone calls, and the State confirmed that none of the calls were relevant to the issues in this case. Additionally, as the trial court noted at the motion for new trial hearing, prisoners are advised that their phone calls are monitored and they have "no reasonable expectation of privacy in those phone calls." The Defendant was a party to the phone calls, and he has not shown that any of the calls were relevant, much less that any were material to his case. The Defendant is not entitled to relief on this issue.

Next, the Defendant argues that the State engaged in prosecutorial misconduct by quoting a witness, DEA Agent Woodham, during its closing argument. Specifically, the Defendant objects to the prosecutor quoting Agent Woodham's statement that the mushrooms in this case contained "over 17,000 hits and that it would keep you high for 10 years." The Defendant further argues that, although he made no objection to the statement at trial, the prosecution's actions amount to plain error. The State responds that the prosecutor committed no misconduct by quoting a witness's actual testimony at trial, that the issue is waived because the Defendant failed to object to the statement at trial, and that the Defendant has not established plain error because he failed to show that a rule of law was breached, that review is "necessary to do substantial justice," or that the Defendant did not waive the issue for tactical reasons, which the State contends the Defendant did to "hammer home his own point during closing argument."

Initially, we agree with the State that the Defendant has waived this issue by failing to make a contemporaneous objection to the prosecutor's remark at trial. See Tenn. R. App. P. 36(a). Because the Defendant failed to raise a contemporaneous objection, he is not entitled to plenary review. Instead, we can only review this issue for plain error. See Tenn. R. App. P. 36(b) ("When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of an accused at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal."). "It is the accused's burden to persuade an appellate court that the trial court committed plain error." State v. Bledsoe, 226 S.W.3d 349, 355 (Tenn. 2007) (citing United States v. Olano, 507 U.S. 725, 734 (1993)). In order for this court to find plain error, (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice." State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994). "[T]he presence of all five factors must be established by the record before this Court will recognize the

- 14 -

existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." State v. Smith, 24 S.W.3d 274, 283 (Tenn. 2000).

The Defendant has alleged that the State committed prosecutorial misconduct during closing argument. Prosecutorial misconduct does not constitute reversible error absent a showing that it has affected the outcome of the trial to the prejudice of the defendant. State v. Bane, 57 S.W.3d 411, 425 (Tenn. 2001) (citing Terry v. State, 46 S.W.3d 147, 156 (Tenn. 2001)). The trial court has substantial discretion in controlling the course of arguments and will not be reversed unless there is an abuse of that discretion. State v. Sexton, 368 S.W.3d 371, 419 (Tenn. 2012) (citing State v. Thomas, 158 S.W.3d 361, 412-13 (Tenn. 2005) (appendix)). Furthermore, the courts of this state have routinely noted that "closing argument is a valuable privilege that should not be unduly restricted." Bane, 57 S.W.3d at 425 (citation omitted). The trial court has substantial discretion in controlling the course of arguments and will not be reversed unless there is an abuse of that discretion. Id. However, an attorney's comments during closing argument "'must be temperate, must be predicated on evidence introduced during the trial of the case, and must be pertinent to the issues being tried.'" State v. Gann, 251 S.W.3d 446, 459 (Tenn. Crim. App. 2007) (quoting State v. Sutton, 562 S.W.2d 820, 823 (Tenn. 1978)).

In order to be entitled to relief on appeal, the defendant must "show that the argument of the prosecutor was so inflammatory or the conduct so improper that it affected the verdict to his detriment." State v. Farmer, 927 S.W.2d 582, 591 (Tenn. Crim. App. 1996). This court must consider the following factors when determining whether the argument of the prosecutor was so inflammatory or improper to negatively affect the verdict: (1) the conduct complained of viewed in the light of the facts and circumstances of the case; (2) the curative measures undertaken by the court and the prosecution; (3) the intent of the prosecutor in making the improper arguments; (4) the cumulative effect of the improper conduct and any other errors in the record; and (5) the relative strength and weakness of the case. Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976).

Here, Agent Woodham testified at trial that a common dose of mushrooms ranged from "6 to 20 milligrams" and could be "as much as 40 milligrams per hit or dosage unit." Based on this information, Agent Woodham opined that 228 grams of mushrooms could contain anywhere from 5,712 to 38,085 doses or, on average, 17,596 dosage units, which could keep a person high "for over ten years[,] 24 hours, 7 days a week." Agent Woodham based this calculation on "the effects lasting from 4 to 6 hours." On cross-examination, Agent Woodham acknowledged that his calculations would only be accurate if the mushroom was comprised of 100% psilocybin, and that there was no way

- 15 -

to determine exactly how much psilocybin the mushrooms in this case contained without a chemical analysis.

The State made the following comments about Agent Woodham's testimony during its closing argument:

> . . . Agent Woodham said on average -- now, we don't know exactly how much psilocybin or psilocin is in those. But he said on average that would be about 17,596 dosage units or hits of mushrooms.
>
> You also heard him say that on average that would -- one dose could keep you high for 4 to 6 hours, which is ten years. He had enough mushrooms in his possession to keep him high for on average ten years.
>
> ….
>
> I would ask you to consider what Agent Woodham said about him. Just looking at the averages. Not the max. The max is 38,000. The minimum is 5,000. Either way Ladies and Gentlemen, he intended to resale those.

The Defendant responded with the following during his closing argument:

> . . . [T]he State quoted the DEA agent that said that that bag had 17,000 and some odd hits in it because it had 200-something grams of psilocybin or whatnot. What he failed to -- I mean and what he finally admitted and what [the State] failed to mention is that you can't tell how much psilocybin is in that bag.
>
> You can't tell if one shroom has a .01 milligram gram of psilocybin in each one. You don't know. Okay.
>
> ….
>
> Seventeen[-]thousand hits. Well, the DEA agent himself admitted that he can't tell you how many hits are in there because he can't tell you the amount of psilocybin that's in each one of them. I mean, I'm not a chemist and obviously he's not either. But you know finally he admitted that. Finally he admitted that he could not tell you how much psilocybin is in each one of those bags. That's very important. Very important. That means he can't tell you how many hits are in any of them.

Based on the above, we agree with the trial court that Agent Woodham did not recant his testimony but, rather, was "actively cross-examined" so that the jury could decide how much weight to give his testimony when making their decision. Additionally, the record reflects that defense counsel waived objection to the prosecutor's statement so that he could discredit Agent Woodham's testimony during closing argument and use the discrepancy in the testimony to his advantage. The prosecutor's remarks were based on evidence presented at trial and were pertinent to the issue of the Defendant's intent to sell the mushrooms. Additionally, the Defendant has not established that his failure to object was not a tactical decision. In defense counsel's closing argument, he repeatedly referred to Agent Woodham's "admission" that he did not know how much psilocybin was actually in the mushrooms and addressed the prosecutor's closing argument statements head on. Thus, the record suggests that the failure to object was not an inadvertent or negligent oversight by defense counsel, but rather a strategic decision to rebut the prosecutor's comments with defense counsel's own argument. Accordingly, review of this issue under plain error is not necessary to do substantial justice. The Defendant is not entitled to relief.

Finally, we detect an error in the entry of a judgment form in this case. The trial court noted on the judgment form for count four that the State dismissed the marijuana charge, however, it is clear from the record that count four was presented to the jury and the Defendant was found not guilty. Therefore, we must remand the case to the trial court for entry of a corrected judgment form showing that the Defendant was found not guilty of count four.

## CONCLUSION

Upon review, we affirm the judgments of the trial court but remand for entry of a corrected judgment form as to count four.

_____
CAMILLE R. McMULLEN, JUDGE

- 17 -