IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 7, 2017 Session

**DELVIN ALLISON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 14-04389          Carolyn W. Blackett, Judge**

_____

**No. W2017-00707-CCA-R3-PC**

_____

Petitioner, Delvin Allison, pled guilty to aggravated robbery with an agreed sentence of seven years and two months as a mitigated offender, which was ordered to be served in the Department of Correction. Petitioner now appeals the post-conviction court's denial of his petition for post-conviction relief in which he contends: the post-conviction court improperly determined that he was not entitled to discovery of the audio recording of the juvenile court transfer hearing; trial counsel rendered ineffective assistance both prior to and during the guilty plea proceedings; and his guilty plea was not knowing and voluntary. Upon reviewing the record and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J. ROSS DYER, JJ., joined.

Terrell L. Tooten, Memphis, Tennessee, for the appellant, Delvin Allison.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Paul Goodman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Background**

The facts of the case as set forth by the State at the guilty plea submission hearing are as follows:

Had this matter gone to trial, Your Honor, the proof would have been as follows in the case. On April the 27th of last year, Mr. Anthony Hall was robbed at gunpoint around the 6300 block of Winchester. Taken in this armed robbery was his wallet, which contained $40.00 in cash and his Tennessee Identification.

Apparently, Mr. Hall would have said that he met a man at that address Winchester [sic] to sell him a tee-shirt. And when [sic] Mr. Hall quoted the price of the tee-shirt, at which time the man pulled out a .32 caliber revolver from his sweatshirt and pointed the gun at Mr. Hall, demanded his wallet and ran from the scene, got into a blue Nissan Maxima. It was occupied by other men.

[Petitioner] was developed as a suspect and positively identified by Mr. Anthony Hall as the person responsible for robbing him. After being advised of his rights [Petitioner] gave a statement of admission.

**Post-Conviction Hearing**

Angela Allison, Petitioner's mother, testified that she spoke with Petitioner on the morning of April 29, 2014, as he was leaving for school. She received a call from the school at approximately 9:00 a.m. informing her that Petitioner had been arrested for aggravated robbery. Ms. Allison testified that she went to the police station and told the person at the front counter that she was there concerning Petitioner. She said that she waited for approximately two hours before she was allowed to see Petitioner. She said that the police told her what happened. Ms. Allison testified that she was distraught and confused, and she did not know her rights at the time. She said that police had already begun questioning Petitioner before she arrived. Ms. Allison testified that Petitioner gave a statement, and an officer was "basically typing the questions in and we was answering them pretty much." She said that the statement was never read out loud, and she did not read it. She signed it in the capacity as a witness. Ms. Allison testified that she was also asked for permission to search her property, which she granted, but nothing was found. Ms. Allison further testified that Petitioner wore bifocal glasses and that he could not see well or read without them. He was not wearing his glasses at the time he gave the statement.

Ms. Allison testified that she was present in court on April 7, 2015, when Petitioner entered his guilty plea. She observed him review the plea with trial counsel, and she was present when trial counsel discussed the plea with Petitioner. She said that trial counsel told Petitioner that he would be sentenced to the "penal farm" if Petitioner accepted the plea. Ms. Allison testified that the box for serving time in the penal farm was clearly "marked off and they were saying that he's going to the penal farm. And that was the only reason why he basically signed off on the plea."

On cross-examination, Ms. Allison testified that trial counsel told Petitioner that he faced a sentence of twelve to twenty years if the case went to trial. She remembered that the guilty plea was read aloud in court, and the prosecutor stated that the sentence would be served in the Department of Correction.

Ms. Allison again testified that she told the officer during the statement that Petitioner could not see without his glasses, and therefore he could not read over his statement to police. She said that the officer then told Petitioner to sign the statement. Ms. Allison testified that she signed the statement after asking the officer some questions. She said: "I asked him a few questions and I was asking him, what are my son's rights? And he read, I guess, something to me or whatever, but I didn't have a clear, you know understanding."

James Allison, Petitioner's grandfather, testified that he attended court appearances with Petitioner a few times, and he heard trial counsel "mention something about eight to 12 years when she spoke with him on a couple of occasions." He was not present at the guilty plea submission hearing. Mr. Allison further testified: "She mentioned something to the fact about the penal farm. I don't know a lot about the system, but I do recall her saying something about the penal farm." On cross-examination, Mr. Allison testified that Petitioner had turned eighteen years old by the time he pled guilty in this case.

Petitioner testified that he spoke with trial counsel on the day of his guilty plea, and she told him that he was facing a sentence of twelve to twenty years if he went to trial. The plea offer was for seven years and two months. Petitioner testified: "My lawyer told me if I took this time, I would serve my time at the workhouse and get 41 days a month which will reduce my sentence quickly, making me eligible for parole in one year for a sentence to be completed in three years." More specifically, Petitioner said that trial counsel told him the sentence would be served on the "penal farm." Petitioner testified that he pled guilty because of the way trial counsel told him that his time would be calculated and because of the location. Petitioner testified the "41 days a month" was the amount of credit for "good time" per calendar month if he served his sentence at the penal farm. He had never previously entered a guilty plea.

Petitioner agreed that he spoke with police on April 29, 2014, and he gave a statement. He said that his mother was present "the second time" police spoke to him. Petitioner testified that police had picked him up at school and transported him to the police station. Petitioner testified that officers questioned him, and he gave a statement. He said:

> I believe in the midst of the first statement that I gave, they called her to
> the station and she was supposed to been waiting in the lobby while they

was back there in the interrogation room threatening me, doing what they do in order to scrap me in order to get me to change my statement.

Petitioner testified that he felt scared, and police refused to give him his eyeglasses that were inside his backpack. He said that he told them that he needed the glasses in order to see. Petitioner testified that he was unable to read his statement before signing it.

Petitioner testified that he did not receive a copy of discovery in his case until September 29, 2016, during the post-conviction proceedings. He said that he thought that he understood the minimum and maximum sentences that he could have received if the case went to trial because trial counsel told him that he faced a sentence of twelve to twenty years. Petitioner testified that during the guilty plea submission hearing, he never realized that he was not being sentenced to the workhouse.

We note that trial counsel did not testify at the post-conviction hearing. There were three hearing dates, and on the third date, the Prosecutor informed the post-conviction court of the following: "Judge, I just checked and I have a text message from [trial counsel]. I had asked her to be here. She and I talked last night. She had remembered a conflict that she has. She can't be here. Judge, I'm just going to submit it on the proof." Petitioner had closed his proof without calling trial counsel as a witness, and there is nothing in the record to indicate that Petitioner had relied upon any representation by the State or the post-conviction court that trial counsel would be called to testify during the State's proof.

**Analysis**

*Discovery*

First, Petitioner argues that the trial court improperly held that he was not entitled to discovery of the audio recording of his transfer hearing in juvenile court. At the post-conviction hearing, the following exchange took place:

> [Post-conviction counsel]: Post[-]conviction under docket number 14-04389. Your Honor, as I've stated before, this is going - - one of the issues I've had - - and I did file two different motions for discovery. I have not received juvenile court audio. I filed a Motion to Compel as it relates to the audio. The response I was given by the State is that they were not going to give it to me.
>
> In addition, it had come to my attention that there is another statement that the defendant may have made that I have nothing in my discovery representing that at all. And so at some point I would ask that the Court

issue an Order of whether I do or do not have a right to the discovery I requested so that I can quit raising that issue and we can move forward.

THE COURT:     I think the law says, and you can check to make sure, but I don't think there is a right to discovery in a post[-]conviction proceeding.

[Post-conviction counsel]:       Okay.

THE COURT:     I've had a law clerk to research that, and I think that that pretty much prevails unless there's an extraordinary circumstance.

Everything that the State has in its file is available to you and there's discovery or whatever. But, I mean, as far as there being something that you can't find and that you have a right to, I'm not really sure there's any right for that.

[Post-conviction counsel]:       Well, quite frankly, Your Honor, the State had not been able to provide me any discovery for whatever reason. They said this case had some issues as it relates to the co-defendant. So I just want to be clear, I did receive the evidence that was available from the co-defendant's attorney, [    ], and that's what I have.

But as it relates to - - and the mother will testify so, there was a statement given by [Petitioner] that's not recorded in the discovery. And after she testified, Your Honor reviews the transcript, it's going to be my position based on this information that that evidence has been withheld. Then as it relates - -

THE COURT:     Okay. If it was testified to and is on a transcript, where is the transcript?

[Post-conviction counsel]:       No, no. It will be testified to today.

THE COURT:     No. Who testified to it?

[Post-conviction counsel]:       No one has testified prior.

THE COURT:     Okay. But was in done in open court?

[Post-conviction counsel]:       Nothing was done in open court.

THE COURT:     All right. So there's no transcript?

- 5 -

[Post-conviction counsel]: Correct.

THE COURT: So this is basically hearsay. Somebody said something that you don't have any proof whether it happened or not, other than the fact she's going to testify to it. It that correct?

[Post-conviction counsel]: That's going to be the proof.

THE COURT: Okay. So therefore, you can't necessarily say that the State has something that it may or may not have.

[Post-conviction counsel]: Well, and that goes to my problem. I can't say anything if they haven't given me anything in an affirmative manner, and that's the - -

THE COURT: They can't give you anything in an affirmative manner if it doesn't exist is my point.

[Post-conviction counsel]: And my point is if they give me nothing, I have nothing to build from.

THE COURT: Again, all I'm saying - - and I'm not saying anything is true - - we'll check when [another Assistant District Attorney] gets back, but if there is nothing to give because there is nothing that exists, there is nothing that we can give you.

[Post-conviction counsel]: I understand that. I understand that.

THE COURT: All right. That's fine.

We disagree with the post-conviction court's finding that there is no right to discovery in a post-conviction proceeding. In a post-conviction case, discovery is governed by T.C.A. § 40-30-109(b) and Tennessee Supreme Court Rule 28, section 6(B)(3)(c) and section 6(C)(7). The statute provides that in a post-conviction proceeding discovery is only available pursuant to Tennessee Rule of Criminal Procedure 16. The first of the court rules, just mentioned, directs the trial court upon a finding that the post-conviction petition contains a colorable claim to order, *inter alia,* disclosure by the State "of all that is required to be disclosed under Rule 16 of the Tennessee Rules of Criminal Procedure, to the extent relevant to the grounds alleged in the petition, and any other disclosure required by the state or federal constitution." Rule 28, section 6(C)(7) directs the State to comply with the court's order to permit discovery under Rule 16 of the Tennessee Rules of Criminal Procedure. *Bryant v. State*, No. E2002-00907-CCA-R3PC,

- 6 -

2004 WL 443414, at *17 (Tenn. Crim. App. Mar. 11, 2004); *see also State v. Bennett*, No. E2016-02276-CCA-R9-PC, 2018 WL 585472, at *3 (Tenn. Crim. App. Jan. 29, 2018). Rule 16 of the Tennessee Rules of Criminal Procedure provides:

> (a)(1)(F) DOCUMENTS AND OBJECTS**. --** Upon a defendant's request, the state shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the state, if the item is within the state's possession, custody, or control and:
>     (i)  the item is material to preparing the defense;
>     (ii)  the government intends to use the item in its case-in-chief at trial;
>     (iii)  the item was obtained from or belongs to the defendant.
>  (a)(2) INFORMATION NOT SUBJECT TO DISCLOSURE **- -** Except as provided in paragraphs (A), (B), (E), and (G) of subdivision (a)(1), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal state documents made by the district attorney general or other state agents or law-enforcement officers in connection with the investigation or prosecution of the case. Nor does this rule authorize discovery of statements made by state witnesses or prospective state witnesses.

Although the post-conviction court erred by ruling that Petitioner was not entitled to discovery in a post-conviction proceeding, Petitioner in this case has not demonstrated or even alleged any prejudice resulting from the post-conviction court's denial of discovery of the audio of the transfer hearing. In his brief concerning this issue, Petitioner states:

> Therefore, Petitioner requests that if the trial court's ruling is not reversed on other grounds, then Petitioner would request that it be reversed on this ground. Petitioner requests that it be reversed on this ground as a last option, since Petitioner strongly feels that it will be reversed based on other grounds, and a reversal on this ground would cause Petitioner to go back through the post-conviction process.

As the matter stands, Petitioner could have caused the issuance of subpoenas *duces tecum* to both the juvenile court clerk and the District Attorney to bring to the post-conviction hearing the tape recording of the Juvenile Court proceedings and any other items believed by Petitioner's post-conviction counsel to be necessary to present Petitioner's case. Such subpoenas *duces tecum* would not be in violation of the post-conviction court's erroneous order denying discovery. The items would not have been provided pre-hearing as discovery, but would have instead been items subpoenaed to be

brought to the hearing for the post-conviction proceedings. Taking this or a similar action by Petitioner likely could have shed light on any prejudice to Petitioner as a result of the post-conviction court's error. *See* Tenn. Code Ann. § 37-1-134(f)2 (the juvenile has the right to obtain the recording to make a transcript).

In addition, the only citation by Petitioner to legal authority in his argument is related to the standard of review. Thus, his failure to cite any authority in support of his issue results in waiver of the issue on appeal. Tenn. Crim. App. R. 10(b); *Armes v. State*, 540 S.W.2d 279, 285 (Tenn. Crim. App. 1976); *State v. Schaller*, 975 S.W.2d 313, 318 (Tenn. Ct. Crim. App. 1997). Even if not waived on this ground, Petitioner failed to show the error was anything but harmless error. *See* Tenn. R. App. P. 36(b).

*Ineffective Assistance of Counsel and Involuntary Guilty Plea*

Petitioner contends that his trial counsel provided ineffective assistance because the juvenile court transfer hearing does not appear to have been properly conducted; trial counsel misinformed him that he would serve his time in the penal farm; and trial counsel advised him of the incorrect range of punishment. Petitioner further alleges that his guilty plea was unknowingly and involuntarily entered.

In a post-conviction proceeding, the burden is on the Petitioner to prove his alleged factual grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f); *see Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. *Id*. Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. *Id*. at 457.

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 205 (1984); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when facts established by clear and convincing evidence prove that his attorney's conduct fell below

"an objective standard of reasonableness under prevailing professional norms." *Id*. at 369 (citing *Strickland*, 466 U.S. at 688; *Baxter*, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id*. at 370 (quoting *Strickland*, 466 U.S. at 694). In order to satisfy the "prejudice" requirement in the context of a guilty plea, the petitioner must show that, but for counsel's errors, he would not have entered his guilty plea and would have proceeded to trial. *Serrano v. State*, 133 S.W.3d 599, 605 (Tenn. 2004) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

First, concerning the juvenile court transfer hearing, Petitioner states the following in his brief:

> In the present case, the Transfer Hearing does not appear to have been conducted properly, and the appeal process does not appear to have been explained to Petitioner, as it relates to how to appeal a Juvenile Court proceedings [sic] in criminal court. However, without the Transfer Hearing audio, or any other verbatim document of that hearing, which the State had withheld, Petitioner cannot pursue that ground clearly and convincingly.

In his post-conviction petition, Petitioner argued that the transfer hearing was improperly presided over by "Dan Michael, who was listed as a 'Special Judge' in regards to the Transfer Hearing, and was described as a licensed attorney." He further noted the record did not indicate who appointed Mr. Michael as a special judge. Concerning this issue, the post-conviction court stated in its order:

> The Petitioner alleges that the appointment of Judge Dan Michael, a licensed attorney, to preside over the Petitioner's juvenile transfer hearing was improper, citing a lack of "proper authority" for Judge Michael's appointment. Petitioner alleges his counsel, [    ], failed to object to Judge Michael's appointment thereby prejudicing the Petitioner on the ground of an improper hearing. The applicable statute states,
>
> > [a]ppeals from juvenile courts are governed by TENN.CODE ANN. § 37-1-159 . . .the statute provides that 'if and only if' a non-lawyer presides at the transfer hearing in juvenile court, then the criminal court, upon motion of the juvenile, shall hold a hearing to determine whether it will accept jurisdiction over the child.

State v. Griffin, 914 S.W.2d 564, 566 (Tenn. Crim. App. 1995). The statute does not address the manner an appeal is taken from a juvenile transfer hearing presided over by a lawyer judge. Id. Furthermore, it is not the court's function to second guess counsel's strategic decisions when analyzing an effective assistance of counsel claim. Henley, 960 S.W.2d at 579.

Petitioner's counsel, at the time of the juvenile transfer hearing, was limited in her ability to object to the hearing pursuant to TENN. CODE ANN. § 37-1-159 described as above. Because the statute does not describe the manner in which an appeal can be taken by the criminal court, . . .

There is nothing in the record to indicate that Petitioner's counsel acted unreasonably . . .

Petitioner, in his brief on appeal, has not made any argument as to how he was prejudiced by having Mr. Michael preside over his transfer hearing or how trial counsel's performance was deficient for failing to object to Mr. Michael being named a special judge and presiding over the hearing. He merely states that "the transfer hearing does not appear to have been conducted properly."

Additionally, Defendant did not attempt to put on any further proof on this issue other than requesting the audio of the transfer hearing. We point out that the State states in its brief several times that a non-lawyer presided over the juvenile court transfer hearing and that Petitioner "fails to explain how the outcome of the proceedings would have been different or how he was prejudiced by counsel's failure to challenge a non-lawyer presiding over the transfer hearing." The State further argues that Petitioner "fails to establish that counsel's failure to object to the legally permissible act of a non-lawyer presiding over the hearing more probably than not affected the judgment or resulted in prejudice to the judicial process." The State's argument is confusing and not based upon anything in the record. Nowhere in Petitioner's brief does he state or argue that a non-lawyer presided over the transfer hearing, and the post-conviction court's order clearly states that the transfer hearing was presided over by a licensed attorney. The only mention of a non-lawyer was from the following quote from the post-conviction court's order denying post -conviction relief:

The applicable statute states,

[a]ppeals from juvenile courts are governed by TENN.CODE. ANN. § 37-1-159. . .the statute provides that 'if and only if' a non-lawyer preside[s] at the transfer hearing in juvenile court, then the

- 10 -

> criminal court, upon motion of the juvenile, shall
> hold a hearing to determine whether it will accept
> jurisdiction over the child.

> State v. Griffin, 914 S.W.2d 564, 566 (Tenn. Crim. App. 1995). The
> statute does not address the manner an appeal is taken from a juvenile
> transfer hearing presided over by a lawyer judge. Id.

We further note that Petitioner, in his amended petition for post-conviction relief, indicates that he was represented by one attorney at the transfer hearing, and a different attorney represented him once he was transferred to criminal court. The attorney who represented Petitioner in juvenile court was not mentioned at the post-conviction hearing. However, the post-conviction court's analysis seems to be correct whoever Petitioner's counsel was in Juvenile Court. Defendant is not entitled to relief on this issue.

Next, Petitioner argues that trial counsel was ineffective for erroneously informing him that he would serve his sentence at the penal farm, which would have resulted in his sentence being reduced more quickly than serving his sentence in the Department of Correction. At the post-conviction hearing, Petitioner's mother testified that trial counsel told Petitioner that he would be sentenced to the penal farm if Petitioner accepted the plea. Petitioner's grandfather also heard something mentioned about the penal farm. Petitioner further testified: "My lawyer told me if I took this time, I would serve my time at the workhouse and get 41 days a month which will reduce my sentence quickly, making me eligible for parole in one year for a sentence to be completed in three years." Specifically, Petitioner said that trial counsel told him that the sentence would be served on the penal farm. He testified that he never realized during the guilty plea submission hearing that he was not being sentenced to the "workhouse."

Concerning this issue, the post-conviction court stated in its order:

> The Petitioner alleges that his agreement to enter a negotiated guilty plea
> was premised on his counsel, [   ], informing him that he would be able
> to serve his confinement at the Penal Farm located at 1045 Mullins
> Station Rd. Memphis, TN 38434. Petitioner further alleges that he was
> not informed, nor was it announced in open court, that he would be
> ineligible for confinement at the Penal Farm and that his sentencing was
> changed to the Tennessee Department of Correction[]. The record
> reflects that it was announced at the sentencing hearing that the
> Petitioner's confinement would be with the Department of Correction[],
> not the Penal Farm. (Evid. Hr'g. 30(December 9, 2016)). The record
> also reflects that this announcement was made in the presence of the
> Petitioner, his counsel, and his mother; no objection was made by
> Petitioner's counsel. (Id. at 31-32). Furthermore, the record does not

- 11 -

indicate that Petitioner nor his mother sought clarification with the court or [trial counsel] at the time of sentencing.

The record supports the post-conviction court's findings. At the guilty plea submission hearing the prosecutor stated:

Your Honor, this is [Petitioner], [   ], indictment number 14-04389, he is represented by [trial counsel]. He is charged with the "B" felony of aggravated robbery. Your Honor, he is pleading guilty as charged pursuant to negotiated plea agreement to this "B" felony and receiving a sentence of – mitigating at seven-point-two-years in the – actually it would be the Department of Correction[], I believe, it's over six years, but of course he will have to serve that at the aggravated robbery rate, but that's seven point-two years.

The trial court also informed Petitioner that he was "pleading guilty to aggravated robbery, class "B" felony, looking at seven years, two months as an aggravated robbery offender at eighty-five percent (85%)[.]" At that point, Petitioner agreed that the sentence was correct, and he did not ask any questions about the penal farm or a reduction in his sentence. The trial court further asked Petitioner the following question: "You understand also that you are doing eighty-five percent of the time?" Petitioner replied: "Yes, ma'am." Furthermore, the judgment form shows that "Workhouse" is completely marked through, and "TDOC" is checked as being where Petitioner's sentence was to be served. Petitioner asserts in his brief that the judgment form was changed after he signed it. However, the record is not clear that the judgment form was changed without Petitioner's knowledge after he signed it. Therefore, we agree that Petitioner did not prove his allegations of fact in support of relief by clear and convincing evidence. He is not entitled to relief on this issue.

Petitioner also asserts that trial counsel's performance was deficient because she incorrectly informed him that he was facing a sentence of twelve to twenty years in confinement if the case went to trial rather than the correct range of eight to twelve years. Concerning this issue, the post-conviction court found:

Petitioner further alleged that his agreement to a guilty plea was a result of [trial counsel] incorrectly informing Petitioner that in the event he did not accept the guilty plea he would be facing twelve (12) to twenty (20) years of incarceration, if found guilty. The record reflects that on several occasions, including the day Petitioner pled guilty, Mr. James Allison, Petitioner's grandfather, witnessed [trial counsel] mention "something about eight (8) to twelve (12) years" to the Petitioner. (Evid. Hr.g. 5 (February 21-23, 2017)). Petitioner admits that the correct sentencing for a class B felony as a Range I offender is eight (8) to twelve (12)

- 12 -

years. (2d Amend. Pet. for PCR at *2). The testimony of Petitioner's grandfather directly contradicts the later testimony of Petitioner in which the Petitioner claims that [trial counsel] informed him that he would be facing twelve (12) to twenty (20) years if he did not accept the plea agreement. (Evid. Hr.g. 8-9 (February 21-23, 2017)).

In summary, the post-conviction court stated the following in its order:

[Petitioner's allegations are] premised on [trial counsel] failing to accurately inform the Petitioner of his legal rights pursuant to his guilty plea on April 7, 2015. The Petitioner fails to establish a claim for ineffective assistance of counsel due to inconsistencies in the record as to [trial counsel's] communications with Petitioner prior to Petitioner accepting the disputed plea agreement and because of Petitioner's failure to prove he has a constitutional right to serve his sentence at the Shelby County Penal Farm. [Trial counsel's] counsel [sic] of Petitioner is therefore not found to be unreasonably deficient nor prejudicial to the outcome of Petitioner's trial.

Again, the record supports the post-conviction court's findings. Petitioner's grandfather, James Allison, testified that he was involved in conversations between Petitioner and trial counsel, and he heard trial counsel "mention something about eight to twelve years when she spoke with [Petitioner] on a couple of occasions." Although the post-conviction court incorrectly stated that Mr. Allison was present at the guilty plea submission hearing, it was correct in stating that Mr. Allison was present when trial counsel informed Petitioner of the correct sentencing range. Therefore, we agree with the post-conviction court's finding that Petitioner did not prove his alleged factual grounds by clear and convincing evidence. Petitioner is not entitled to relief on this issue.

### Knowing and Voluntary Guilty Plea

Petitioner argues that his guilty plea was not knowingly and voluntarily made. In determining the voluntariness of a guilty plea, a trial court must advise the defendant of the consequences of a guilty plea and determine whether the defendant understands those consequences to ensure the plea is a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *see also Boykin v. Alabama*, 395 U.S. 238, 244 (1969). The trial court must address the defendant personally in open court, inform the defendant of the consequences of the guilty plea, and determine whether the defendant understands those consequences. *See State v. Mackey*, 553 S.W.2d 337, 341 (Tenn. 1977), *superseded on other grounds by rule as stated in State v. Wilson*, 31 S.W.3d 189, 193 (Tenn. 2000); Tenn. R. Crim. P. 11(c). In determining whether the petitioner's guilty pleas were knowing and voluntary, this court looks to the following factors:

the relative intelligence of the [petitioner]; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993).

Petitioner argues that his guilty plea was not knowing and voluntary because the trial court failed to advise him of certain rights. *See State v. Mackey,* 553 S.W.2d 337 (Tenn.1977), *superseded on other grounds by* Tenn. R.Crim. P. 37(b) and Tenn. R.App. P. 3(b), and Rule 11(b) of the Tennessee Rules of Criminal Procedure. Petitioner's argument on this matter consists in part as follows:

Had the trial court advised Petitioner of the minimum and maximum punishment that he was facing, that could have clarified all the concerns relating to that issue. Also, the trial court failed to clarify where Petitioner would be serving his time, nor did it inform him that the Judgment order had been altered, after Petitioner had signed it. The trial court never informed Petitioner that he had a right to plead not guilty, and a right against self-incrimination. Petitioner's right to remain silent is a constitutionally protected right, and he [sic] should have explained it to him. The trial court also did not inform Petitioner that by pleading guilty to a felony, his punishment could be enhanced if convicted again, based upon his plea, and that he could never own or possess a firearm. He was also not informed that the conviction is permanent, and could never be expunged.

Although Petitioner raised this issue in his post-conviction petition, he did not present any evidence of this issue at the post-conviction hearing, other than a copy of the guilty plea hearing transcript, and the post-conviction court did not address this issue in its order denying post-conviction relief. At the conclusion of Petitioner's testimony on direct and cross-examinations, the following exchange took place:

THE COURT:    All right. Let me ask you this. What is your chief complaint at this time? I mean, I understand what you're saying about her, okay.

- 14 -

[Petitioner]:        Yes, ma'am.

THE COURT:        But again, I just want to make sure we understand and we're all on the same page in terms of what you're asking for.

Are you saying that you feel like she did not represent you accordingly so that you ended up in the place that you wanted to serve your time? Is that what your complaint it?

[Petitioner]:        That's partial reasoning. My full reason is that she gave me improper information in order to get me to take this plea. I felt like if I would have had a better attorney that helped me weigh my options and discuss my case with me, I would have had a better outcome so I would rather take my chances of going to trial with a better attorney knowing what I know now about the law and my case that I have a possibility.

The only mention of this issue came during Petitioner's closing argument (which is not evidence) when post-conviction counsel said: "Furthermore, he was not explained of his right to plead not guilty and to persist in that plea, he was not explained about his right to cross-examine witnesses." Petitioner's evidence at the post-conviction hearing centered on ineffective assistance of counsel. There was no testimony concerning this specific issue. Therefore, this issue is waived. *See Montreal Lyons v. State*, No. W2010-00798-CCA-R3-PC, 2011 WL 3630330, at *3 (Tenn. Crim. App. Aug. 18, 2011). Accordingly, Petitioner is not entitled to relief on this issue.

## CONCLUSION

After a thorough review, we affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, PRESIDING JUDGE

- 15 -